UNITED STATES, for Use of ROCKLAND LAKE TRAP ROCK CO., v. CONKLING et al.

(Circuit Court of Appeals, Second Circuit. January 19, 1905.)

No. 102.

1. PUBLIC WORK—STATUTORY BONDS—CHARTERS.

Rev. St. § 3747 [U. S. Comp. St. 1901, p. 2523], requires every person contracting with the United States for public work to execute a bond to make payments to all persons supplying him "labor and materials" in the prosecution of the work, and that the person supplying such labor and materials shall have a right to sue in the name of the United States on the bond. Defendant, having contracted with the United States to purchase and remove certain stone near the Harlem river, executed a bond under such section, conditioned that he would promptly make full payments to all persons supplying him with labor and materials in the prosecution of the work. Held, that the furnishing of certain scows to defendant, to be used in removing the stone and in other work being prosecuted by defendant, did not constitute the furnishing of "labor and materials" to defendant, so as to entitle plaintiff to recover the amount due under the charter party on the bond.

2. SAME—EVIDENCE—LETTERS.

In an action on a charter party, the exclusion of letters between the parties prior to the execution of the contract was not error; the contents thereof being merged in the subsequent contract.

In Error to the Circuit Court of the United States for the Southern District of New York.

John F. Foley, for plaintiff in error.

James R. Soley, for defendants in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. In May, 1899, defendant John P. Conkling entered into a contract with the United States to purchase and remove the stone owned by the United States, stored on the south side

of the cut through Dyckman's Meadows, near Spuyten Duyvil and the Harlem river. The contract provided as follows:

"The contractor for the removal of the stone must furnish all appliances and labor necessary to handle and transport it, and must dispose of it in accordance with law. All débris or material which may be mixed with the rock must also be removed. * * *

"The stone will be measured by cubic contents on scows, or other vehicles of transportation on which it may have been placed, and for this purpose it must be compactly piled in such a manner as to facilitate the measurement.

"Measurements will be taken at the place where the stone is stored, by an authorized agent of this office."

Defendant Conkling, as principal, and defendant the Fidelity & Deposit Company of Maryland, as surety, executed the required bond that defendant Conkling would duly perform the covenants in said contract and "shall promptly make full payments to all persons supplying him with labor and materials in the prosecution of the work provided for in said contract."

The relator chartered to Conkling certain scows, to be paid for in monthly payments at a per diem rate, and sought to recover on said bond for their use, on the ground that they were labor and materials supplied in the prosecution of said work. The statute relating to such bonds provides, inter alia, as follows:

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract, and * * * said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit, in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment and execution." Rev. St. § 3747 [U. S. Comp. St. 1901, p. 2523]. · ·

The court below expressed the opinion that these scows and their use were not "labor." The evidence shows the correctness of this conclusion.

Jacob E. Conkling, the secretary of the relator, testified as follows:

"We employed the captains of these vessels that we chartered to Conkling, and we paid them. They were simply custodians of the scows—keepers of the scows. * * * The master is custodian of the scow. He keeps the scow, looks after her, keeps her pumped out, and does such other work around the scow as to protect her and take care of her, and attends to her lines. He has nothing whatever to do with the loading or unloading."

United States v. Kimpland (C. C.) 93 Fed. 403.

The question presented is as to the legal construction of the words "labor or materials," as used in said statute. Counsel for the relator relies upon the decision in American Company v. Lawrenceville Cement Co. (C. C.) 110 Fed. 717, as "a controlling authority." Counsel for defendants rely on the decision in United States ex rel. James McAllister v. Fidelity & Deposit Company of Maryland, 86 App. Div. 475, 83 N. Y. Supp. 752, in which, they say, "the facts are identical with the facts in the present case."

The cases of American Surety Co. v. Lawrenceville Cement Co., supra, and of United States v. Morgan (C. C.) 111 Fed. 474, involved claims arising out of the same transaction, and based on the same bond. There one Morgan, as principal, and the American Surety Company, as surety, executed a bond under said statute for the performance of a contract by Morgan to do work and supply materials for gun emplacements at Great Diamond Island, Portland Harbor, Me. In the course of said work the plaintiff, the Loughlin Company, paid the expenses for transporting beams, bolts, and washers, to be used in the work contracted for, from Portland to Diamond Island, and this charge was allowed; but the charges of plaintiff for expense in fitting out and equipping a steam launch, expressly constructed for transporting material to the place where the work was to be done to be used in said work, were disallowed, as were also expenses incurred in constructing cars, ships, tubs, and conveyors used in the prosecution of said contract, "in making the excavations, * * * and conveying the materials excavated." Charges for furnishing tools and appliances used in the prosecution of the work, and for the construction of a track upon which cars were run to transport the earth and rock excavated preparatory to the building of the fortification, and afterwards used for conveying concrete to said building, were disallowed. This decision was rendered by Judge Webb. United States v. Morgan, supra.

In the American Surety Company Case, supra, Judge Putnam allowed other contractors' claims for repairs to the plant, and for trucking from the steamboat landing on the island to the precise locality of the work. Claims "for water-borne transportation of materials used in the work, such as coal and lumber, to the island where the work was done," were rejected by the master; and the rejection was approved and affirmed, on the ground that the court could not determine from the record on which side of the line they fell, in reference to the rule stated by the court in its opinion. There the court, referring to the report of the master as to the claims, said as follows:

"Also we think the master was too strict with reference to some minor claims for transportation. Clearly, he was right in his illustrative suggestion which led up to his conclusion with reference to claims for trucking and water carriage. As stated by him, the carrier ordinarily has a lien for his freight, which is a sufficient protection to him. Therefore, in cases of transportation by a carrier from distant points, or, indeed, from another port than the port at which the contractor's work is being done, the carrier would not ordinarily be protected by the statutory bond, for two reasons: First, transportation for considerable distances in the regular course, by the ordinary lines of either steam, sail, or rail, cannot easily be brought within the words of the statute, 'supplying labor or materials'; and, second, inasmuch as carriage of that character, especially under an ordinary bill of lading, or its equivalent, creates a well-recognized lien for freight, the equitable rule would apply, that a carrier, under such circumstances, cannot give up his cargo, and enforce his claim against a mere surety, after he has so placed himself that the surety cannot be subrogated to the security which the law gave. The first objection, however, does not necessarily apply to truckmen who are moving materials from a place of landing to the exact locality of the work under contract, although the distance may be somewhat considerable, nor to water-borne transportation carried on by the servants of the contractor, or for short distances without the aid of steam or a fully equipped vessel. The second objection, moreover, must not be carried to an extreme; otherwise it would defeat the practical operation of the statute. Every person selling materials for cash holds a lien

for the purchase money until he voluntarily waives it by delivery; and every person engaged in transportation, who is not the mere servant of the owner of the merchandise transported, holds a carrier's lien, even though the carriage is of miscellaneous parcels, over short distances in the immediate locality, and at frequent, irregular intervals. Nevertheless, with reference to each, such liens are not ordinarily insisted on, and it would be an unreasonable construction of the statute to hold that it intended to interfere with the convenience of minor dealings in such methods as the usual practices establish. Therefore, as already stated with reference to either class, to insist on the fact that the lien is waived, and short credit given, would defeat the beneficial purpose of the statute, and the practical ends which it is intended to accomplish."

The court had already discussed the state lien statutes and the federal statute, and the effect of giving a lien in the latter for labor and materials used "in the prosecution of the work." Judge Putnam says:

"The underlying equity of the lien statutes relates to a direct addition to the substance of the subject-matter of the building or other thing to which the lien attaches, while the statute in question concerns every approximate relation of the contractor to that which he has contracted to do."

That case presents conditions radically differing from those involved herein. The decision as to charges allowed for transportation to the place where the work was to be done seems to rest on the fact that the carrier had a lien on the cargo for freight, but that it would be impracticable to assert it for carriage for short distances by vessel or trucks. Here no lien could be claimed for carriage to the place where the work was to be done, because the contractor was to remove the material, and it was removed after the work was done and before the carriage began. The scows were not materials supplied "in the prosecution of the work provided for in the contract," for the prosecution was completed when the removal of the stone was effected, and before the scows had served any purpose except as a convenient means for measurement; the measurements being made at the place where the stone was stored. Whether the stone was removed to an adjoining piece of land, or to a scow, or to a railway track, or otherwise lawfully disposed of, was immaterial. The obligation of the contract, which the bond was intended to secure, was fulfilled by the act of removal. But irrespective of these considerations, Judge Putnam holds that general transportation for a considerable distance by ordinary lines of transportation is not within the words "supplying labor or materials," and approves the rejection of claims for transportation by the master in the absence of evidence to show that they fall within the rule as stated by him. He bases his disallowance of other claims on the following ground:

"They did not enter into the construction of the public work, but were in the nature of tools and appliances to be used by the contractor for his own convenience and advantage in his execution of his contract."

This case does not sustain the contention of the relator.

In United States v. Hyatt, 92 Fed. 442, 34 C. C. A. 445, the Circuit Court of Appeals for the Fifth Circuit expressed the opinion that freight charges by a railroad for the carriage of stone to the place of prosecution of work were neither labor nor materials, within the meaning of the statute under consideration.

In United States ex rel. McAllister v. Fidelity & Deposit Company of Maryland, supra, where the material facts are practically identical with those herein, the court said:

"The plaintiffs in furnishing a boat to transport materials to the works at Coaster's Harbor Island have not furnished any material used in the prosecution of the work provided for in the contract, any more than a common carrier might be said to furnish materials by transporting them to the point where they were to be used. Churchyard might have hired the plaintiffs to transport his materials as freight, and it would hardly have been suggested that under the statute the plaintiffs would have had a lien for materials furnished in performing the contract, and we are unable to discover any reason why they have a stronger claim because Churchyard chose to hire the means of transportation, and to assume the responsibility of operating the craft."

We conclude that the statute was not intended to cover a case like the present, where there was neither carriage nor a contract to carry to the place where the work was prosecuted, but only a contract to remove materials purchased from the place of purchase.

The court below held that the use of the scows was "not materials supplied solely in the prosecution of the particular work covered by the contract sued upon, because these scows were engaged in the prosecution of other work—in the prosecution of building a breakwater at Larchmont, building a pier for the Long Island Railroad at Newtown Creek, and some structure for the Central Railroad at Spuyten Duyvil; and there is nothing in the testimony upon which we can make any apportionment whatsoever for services in the different capacities." It appears that the scows were chartered for the execution of two distinct contracts—one for removal and one for construction—and that the relator claimed a lump sum under said two contracts, without attempt at apportionment. It further appears that defendant operated the scows under a general charter; that, the removal of the stone being effected by loading it on the scows, he employed them in the execution of other contracts for construction of a breakwater, a pier, and a bridge, respectively, at various places, at long distances from the place of loading; and that the stone was carried to and delivered at said places under said general charter. Therefore the scows were not supplied in the prosecution of the work, but they were supplied as carriers "for moving stone from Government Dock, Harlem Ship Canal, to and along shores for riprap and filling," and were to be used in "the Hudson River, New York Bay, East River, Harlem and in Long Island Sound, as far as Larchmont Harbor." This action is for the breach of condition of a bond for performance of a specific contract. The evidence showed that the scows were employed generally in the execution of several contracts. No evidence was introduced to show any segregation of charges to this specific contract. It is impossible for this court to say whether there was in fact any separation of services, or to apportion the general charges between the various contracts. The evidence leaves it very doubtful whether the plaintiff had in mind any claim of liability on this bond for any portion of the charter money. It is clear that the obligation of the surety could not be enlarged to cover the contractor's general liability under the charter, or a pro rata portion of such liability, and especially where no data are furnished for its determination. Childs v. Anderson, 128 Mass. 108; Crawford v. Powell, 101 Ind. 421; Gorgas v. Douglas, 6 Serg. & R. (Pa.) 512; McClain v. Hutton, 131 Cal. 132, 141, 61 Pac. 273, 63 Pac. 182, 622; United States ex rel. McAllister v. Fidelity & Deposit Company of Maryland, supra.

In United States ex rel. James McAllister v. Fidelity & Deposit Company of Maryland, supra, the contractor was engaged in the execution of three distinct contracts for the United States, and hired a lighter from the relator for transporting materials indiscriminately to the different points where the work was in progress. We have already seen that the court held this furnishing of a lighter did not constitute a supplying of materials. But in discussing the branch of the case relevant to the question we are now considering, the court said as follows:

"As a matter of fact, Churchyard used the lighter for transporting materials, machinery, etc., to each of the three government contracts, and no account was kept of the portion of time it was employed upon the Coaster's Harbor Island barracks. He used it generally in performing several contracts; the cargoes were apparently piled on indiscriminately, and delivered at the various points; and it is difficult to understand how the Fidelity & Deposit Company, which had no intimation, so far as the record shows, that this contract for the use of the lighter was to be made, could be held to have contracted to guaranty payment to these plaintiffs under the statute here in review. Assuming, as we must, that the defendants knew the law, could they be deemed to have contemplated this liability? Did the law contemplate it? We think not."

We conclude, therefore, that the statute was not intended to protect one letting a boat under a charter for the general use of a contractor, and that the court committed no error in dismissing the complaint on that ground.

The exceptions to the exclusion of certain letters between the parties prior to the execution of the contract are without merit. No reason was given why the letters were offered. The contents thereof were merged in the subsequent contract. Furthermore, while the exclusion of the letter of September 9th did not hurt the relator, it would have helped defendants, because it showed that the relator knew the scows were "to be used in transporting stone * * * to be deposited in docks and breakwaters wherever I can get contracts for filling."

The judgment is affirmed, with costs.