## SOUTHERN SURETY CO. v. MUNICIPAL EXCAVATOR CO. et al.

No. 7342—Opinion Filed July 25, 1916.

Rehearing Denied Oct. 31, 1916.

(160 Pac. 617.)

### 1. Pleading—Exhibits—Effect.

The allegations of a petition challenged by a general demurrer must be construed in connection with the exhibits attached to the petition.

### 2. Municipal Corporations—Public Improvements—Bond of Contractor—Construction.

A claim for rentals due for the use of certain trenching machines let to a contractor in charge of the construction of a waterworks system, for a municipal government, is not "labor and material furnished in the construction of such public improvement," and is not protected by the bond required by section 3881, Rev. Laws 1910, and the surety on such bond is not liable for such indebtedness.

(Syllabus by Galbraith, C.)

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by the Municipal Excavator Company against the Southern Surety Company and another. Judgment for plaintiff, and the Surety Company brings error. Reversed and remanded, with directions.

E. C. Stanard, J. H. Wahl, and C. H. Ennis, for plaintiff in error.

Twyford & Smith, for defendants in error.

Opinion by GALBRAITH, C. The Municipal Excavator Company brought action against the Southern Surety Company and Nick Peay, upon a bond given in pursuance of sections 3881 and 3882, Rev. Laws 1910. The allegations of the petition, so far as important to be noticed here, are: That the Southern Surety Company does a general bonding business throughout the state of Oklahoma. That Nick Peay, doing business under the name of Nick Peay Construction

Company, as principal, and the Southern Surety Company as surety, executed and filed with the clerk of the district court of McIntosh county a certain bond in writing, a copy of which is attached as "Exhibit A." That said bond was for the sum of $63,000 and recited that whereas the Nick Peay Construction Company had entered into a written contract with the city of Eufaula, Okla., for the construction of a sanitary sewer system and the further extension of the waterworks system, now, therefore, "if the said principal shall well and truly pay all indebtedness incurred for any and all labor and material, furnished in the construction of said extension in the performance of said contract, then this obligation to be null and void, otherwise to remain in full force and effect." That prior to making and filing the bond the plaintiff entered into a certain contract in writing with the defendant Nick Peay, conditioned for supplying and furnishing certain labor and material to be used in the execution of the terms of said contract of the said Nick Peay with the city of Eufaula. A copy of said contract was attached to the petition, and further alleged: "That the said Nick Peay, doing business as the Nick Peay Construction Company, became indebted to and incurred certain indebtedness with the plaintiff for work and material furnished by plaintiff to said Nick Peay in the construction of said sewer system and extension provided for and under the terms of the contract marked 'Exhibit C,' and to cover which indebtedness the said bond marked 'Exhibit —' was made and filed by the defendants, and each of them. That the labor and material furnished by plaintiff to said defendant aforesaid was under and by virtue of the said subcontract hereto attached marked 'Exhibit B.' That said labor and material was furnished and the indebtness incurred therefor between the 25th day of January, 1913, and June 12, 1913, and was of the contract price and value of $3,394.51, and on which amount the plaintiff received payment of $850, leaving a balance due and unpaid of $2,544.51 for such labor and material so furnished and indebtedness incurred as aforesaid and for which said surety bond was given by said defendants." And that demand for the payment of the balance due on said account for labor and material had been made and payment refused, and that said action was brought within six months as provided by statute, and attached a statement of the account for labor and material as claimed, as "Exhibit B." and prayed for judgment in the amount of the account.

The statement of the account attached to the petition was as follows:

Oklahoma City, Okla., August, 1913.

Nick Peay, doing business as the Nick Peay Construction Company, To Municipal Excavator Company, Dr.

| | |
|---|---:|
| February 28, 1913, statement rendered _____$ | 894 23 |
| February 28, 1913, statement rendered _____ | 483 36 |
| April 6, 1913, statement rendered___ | 409 21 |
| April 6, 1913, statement rendered___ | 10 74 |
| June 12, 1913, statement rendered__ | 1,443 53 |
| June 12, 1913, statement rendered__ | 144 44 |
| | $3,394 51 |

Credits.

| | |
|---|---:|
| March 1, 1913, by cash_____ | 850 00 |
| Balance due _____ | $2,544 51 |

The pertinent parts of the contract between plaintiff and Nick Peay, under which plaintiff's claim arose, are as follows:

"Clause 1. That said first party (plaintiff) hereby agrees to furnish said second party (the construction company) with two of its trenching machines for a minimum term of sixty working days, without respect to delays, Sundays and legal holidays excepted. * * *

"Clause 3. Said first party hereby agrees to furnish one operator who shall be in full charge of said machine during such time as second party desires to operate said machine, and shall also have the right to employ an engineer and fireman to operate the engine and do firing. Said operator, engineer and fireman to be the employes of and to be paid by the second party.

"Clause 5. Said second party shall pay to said first party a minimum rental of $30 for No. 43 and $20 for No. 58 per day. * * * and in addition to pay five (5) cents per cubic yard for all excavation in trenches less than eight (8) feet in depth, and ten (10) cents per cubic yard for all excavations in trenches eight (8) feet or more in depth."

The surety company filed a general demurrer to the petition which was by the court overruled, and the surety company, refusing to amend but electing to stand upon its demurrer, refused to plead further, and the court rendered judgment against it for the amount claimed in plaintiff's petition. To review that judgment an appeal has been duly perfected to this court.

The error assigned is the order of the court overruling the demurrer to the petition. It is insisted by the plaintiff in error that, inasmuch as it appeared from the face of the petition that the account sued upon was not for "labor and material" furnished in connection with the execution of the contract for a public improvement, but arose out of a claim for rentals for trenching machines furnished by the plaintiff to the con-

tractor, this ndebtedness is not within the condition of the bond, and therefore the petition failed to state a liability against the surety company. It is contended on behalf of the defendant in error that inasmuch as the petition alleged that the account was for "labor and material furnished the contractor in the execution of the public improvement," and since the demurrer admitted the truth of these allegations, therefore the petition stated an indebtedness within the conditions of the bond, and the court was therefore right in overruling the demurrer.

It may be conceded that, so far as the allegations of the petition are concerned, considered alone an indebtedness within the terms of the bond is declared upon, since the claim is alleged to be due for labor and material furnished the contractor in the execution of his contract; but, when taken in connection with the exhibits attached to the petition, it clearly appears that the indebtedness sued upon was for the rentals for the trenching machines that the plaintiff furnished the contractor. However, the rule is that in construing the petition upon a demurrer the exhibits attached thereto must be considered in connection with the allegations thereof. In the case of Whiteacre v. Nichols, 17 Okla. 387, 87 Pac. 865, it is said:

"On demurrer to a petition, as defective, in that it does not state facts sufficient to constitute a cause of action, the petition should be liberally construed with a view to substantial justice between the parties; and a demurrer will only be sustained where the petition presents defects so substantial and fatal as to authorize the court to say that, taking all the facts to be admitted, they furnish no cause of action whatever."

In Calman v. Kreipke, 40 Okla. 516, 139 Pac. 698, the Nicholas Case, supra, is approved, and the first paragraph of the syllabus of that case reads:

"In an action on account where the petition upon its face states facts sufficient to constitute a cause of action against the defendant, but certain exhibits attached thereto suggest a doubt as to whether the defendant, in making the purchase, acted in a representative capacity, or as an individual, a general demurrer thereto should be overruled."

See, also, Davis et al. v. Board of Commissioners of Choctaw County, 58 Okla. 77, 158 Pac. 294.

Under the rule announced in these decisions, the allegations of the petition in the instant case must be construed in connection with the exhibits attached thereto. So construed, it clearly appears that the claim in suit is due entirely for rentals on machines furnished by the excavator company to the contractor. This presents the question squarely whether or not a claim for rentals due for a machine, independent of any claim for labor, for operating it, can properly be said to be "labor and material furnished" within the condition of the bond in suit. Upon the answer returned to this question depends the correctness of the ruling of the trial court. If the claim for rentals was for either labor or material, then the ruling of the trial court was right; but, if such claim cannot be held to be either for labor or material, then the ruling was wrong.

We are reminded at the outset of this investigation that the industry of counsel has not discovered a single decision holding that rentals for machines furnished a contractor engaged in construction work were either labor or material within the terms of a statute permitting liens against improvements for labor and material furnished therefor, or that such a claim is within the protection of a bond required of a public contractor, conditioned that all labor and material furnished shall be paid for by him. It seems that this question is one of first impression in this jurisdiction, although analogous questions have been adjudicated by the courts of other states having a similar statute to our own.

Section 3881, Rev. Laws 1910, requires any public officer before entering into a contract for any public works costing to exceed $100 to take from the contractor a sufficient bond, payable to the state of Oklahoma, conditioned that the contractor "shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements."

In the state of Washington the statute requiring a public contractor to give bond was broader than the statute in this state, inasmuch as it required the condition of the bond to be that the contractor "shall pay all laborers, mechanics, subcontractors, and materialmen, and all persons who shall supply said principal or subcontractors with provisions and supplies for the carrying on of said work, all just debts, dues and demands incurred in the performance of said work."

Hurley-Mason Co. v. American Bonding Co., 79 Wash. 564, 140 Pac. 575, was an action for the rental value of a pump and hoist derrick furnished to the contractor, constructing a waterworks system for a city in the state of Washington. The action was against the contractor and the surety company on a bond conditioned as provided in the statute above quoted. The court held

that this claim for rentals was "supplies" and within the condition of the bond, and that the surety company was liable therefor. The court said in the course of its opinion:

"It must be conceded that this approaches very close to the line between secured and unsecured items under this statute and bonds given in pursuance thereof."

It will be observed that the conditions of the bond given under the statute of the state of Washington were broader than the conditions of the bond in suit in the instant case. It cannot be claimed that this decision is an authority justifying the holding that the claim for rentals involved in the instant case was for either labor or material within the conditions of the bond in suit.

In the state of Michigan there was a statute similar to section 3881 of our Rev. Laws 1910. The case of City of Alpena v. Title Guaranty & Surety Company, 159 Mich. 329, 123 N. W. 1126, was an action for labor and material furnished in repair work performed on the pumps and machines used in connection with a waterworks contract. The question presented was whether or not this claim was within the conditions of the bond requiring the payment of labor and material furnished. The court held that it was not, and in part said:

"The provisions of the bond upon which the claim of the use plaintiff is based is the promise of the defendant to save harmless the city of Alpena, etc., from unpaid claims for 'labor and material furnished under the contract.' To give to this provision the construction claimed for it by the plaintiff would render the surety liable, not only for the cost of small and incidental repairs to the machinery and plant used in construction (which is the extent of the use plaintiff claims in the case at bar), but also for all large changes and improvements in equipment, more or less permanent in character, and perhaps long surviving in usefulness the completion of the contract upon which the equipment was being used at the time the repairs were made. And by a parity of reasoning it might even be said that the surety became responsible for the original cost of the plant, because it was purchased by the contractor to be used upon the contract. We are of opinion that this contention is not tenable, but, on the contrary, think that the term 'labor and material, furnished under the contract,' means such labor and materials as are necessary to construct the work in accordance with the contract. This view is supported by reason and authority."

Kansas City v. Youmans, 213 Mo. 151, 112 S. W. 225, was an action against the surety on a bond having a similar condition to that in the instant case, and the court in hold-

ing that a claim for explosives sold to a contractor and used in the construction of the waterworks system was within the protection of the bond, and that steam shovels, engines, boilers, shovels, crowbars, and other like tools were not within its provisions, in part said:

"A steam shovel, an engine, and boiler, picks, shovels, crowbars, and the like, are tools and appliances, which, while used in the doing of the work, survive its performance and remain the property of their owner. Not so, however, with materials that are used up in the performance of the work, and are therefore invisible except as they survive in tangible results. We think that explosives, when used as substitutes for other recognized 'materials,' are covered by the same principle. They enter into and form a part of the permanent structure quite as much as the earth, rails, ties, culverts, and bridges that we can see and feel."

McAuliffe v. Jorgenson, 107 Wis. 132, 82 N. W. 706, was an action seeking to establish a lien for rentals due for the use of a well-boring machine used by the contractor in drilling a well. The court, in denying the claim, in part, said:

The "plaintiff's right to a lien is based upon the fact that he hired his well-boring machine to * * * who had the contract to bore the well. * * * Under no permissible theory can it be said the plaintiff has furnished any 'material' that entered into or became a component part of the well. Whatever right he has, if any, arises from the use of his machine. When he hired it to * * * (the contractor) to all intents and purposes it became the latter's machine, the same as if he had purchased it outright. The plaintiff did no manual labor, either by himself or his servants, toward the construction of the well. The machine was used by * * * (the contractor) as though it was his own. For its use in connection with his own labors he would have been entitled to a lien; not for the use of the machine alone, but because, with his labors in the use and operation of the machine, the well was drilled."

In Wood Curtis & Co. v. El Dorado Lumber Co., 153 Cal. 230, 94 Pac. 877, 16 L. R. A. (N. S.) 585, 126 Am. St. Rep. 80, 15 Ann. Cas. 382, it was held by the Supreme Court of California:

"One who merely rents horses and harness to the contractor, to be used in the prosecution of railroad construction, does not bestow labor on the road within the meaning of a statute giving a lien to one so doing."

In Potter Mfg. Co. v. Meyer & Co., 171 Ind. 513, 86 N. E. 837, 131 Am. St. Rep. 267, the Supreme Court of Indiana, in denying a lien claimed for the rental value of a trenching machine, under a statute giving lien for

machinery furnished for the construction of public improvements, in part, said:

"A lien is authorized in favor of a laborer to the extent of the value of the work done by him. This trench machine owned by appellant did not work automatically, but was operated only by men in the employ and under the direction of the lessee of the machine, J. J. Smith & Co. There could be no question that the contractor, J. J. Smith & Co., might have acquired a lien to the extent of the value of the work done * * * by this labor-saving machine. Appellant, however, did not perform * * * any labor upon the structure to be erected. Its claim is not for the value of work actually done, but compensation at an agreed price for a specified time as the rental value of the machine without regard to whether it was idle or in use upon this work. But, waiving any technical questions as to the theory of the cross-complaint, and assuming that, if the evidence so warranted, appellant might recover thereon to the extent of the value of work done by it, we are clearly of opinion that appellant is not shown to have performed any work, and, as the mere lessor of this machine, cannot be regarded as one performing labor within the meaning of the statute under consideration."

United States, for use, v. Conklin et al., 135 Fed. 508, 68 C. C. A. 220, was an action to recover a claim for per diem charged for a certain scow let to the contractor engaged in public works against the surety and his bondsmen on a bond given under the federal statute conditioned for the payment of all labor and material furnished on the ground that the rental for this scow was labor and material supplied in the prosecution of said work. The court, denying the claim, held that it was not within the conditions of the bond.

In United States v. American Surety Co., 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437, it was admitted that the claimant had furnished labor on a public improvement for which he had not been paid, but it was contended that he had furnished this labor to the subcontractor, and that the liability on the bond required by the federal statutes from a contractor on public works extended only to claims for labor and material furnished to the contractor. The court said, in effect, that the object of requiring the bond under the law was to make sure that labor and material entering into public improvements for the federal government should be paid for, and that, while the literal terms of the obligation of the bond only covered labor and material furnished to the contractor, still the labor and material sued for in that case entered into the public structure and was within the spirit and

therefore within the protection of the bond. This case, however, does not hold, and is not an authority for the contention, that a claim for rentals on a machine furnished to the contractor, used upon public works, was for either labor or material within the protection of the obligation of such a bond as that in suit.

Under the foregoing authorities, and many others cited and discussed in those decisions, we are constrained to the view that only "a strong arm" construction of the statutes would bring the claim involved in this suit within the protection of the bond. It cannot be said that the excavator company furnished either labor or material for the public works, or that it sustained any contract relation to such public works. It merely furnished two machines to the contractor that he employed in the construction of this public work. It is true that the excavator company furnished the skilled operator and retained the right in its contract to furnish an engineer and fireman, but it expressly stipulated that such employes should be the employes of the contractor, and should be paid for by him. It therefore performed no labor in connection with the operation of the machine. Its claim is only for a stipulated rental for the use of the machine. Such a claim was not within the letter or spirit of the bond and was not protected thereby.

The court was therefore in error in overruling the demurrer to the petition, on account of which the judgment appealed from should be reversed, and the cause remanded, with directions to the trial court to vacate the order overruling the demurrer and to enter an order sustaining the same, and for such further proceedings as may be necessary not inconsistent with this opinion.

By the Court: It is so ordered.