Southern Surety Company, Appellant, vs. Metropolitan Sewerage Commission and others, Respondents.

*November 15, 1924—January 13, 1925.*
*May 4—June 22, 1925.*

*States: Contracts for public work: Bond: Amounts due contractor: Items lienable against withheld balances: Scope of statute creating lien: Liability of surety: Obligation broader than statutory liability: Attorneys' fees for municipality: Interest: Contracts: Extras: Necessity of writing: Waiver or estoppel.*

1. Ch. 388, Laws of 1917, amending sec. 3327a, Stats., which afforded persons performing labor or furnishing materials for the erection, repair, etc., of buildings of the state no other or

Southern Surety Co. v. Metropolitan S. Comm. 187 Wis. 206.

greater right against a contractor and surety than was afforded by the general lien statute against individuals or corporations so far as the kind or nature of the work done or materials furnished was concerned, did not change such statutory provisions, but only changed, as to the kind of public work, the public bodies and funds as to which the remedy was to apply. p. 211.

2. One who could not, from the nature of his claim for labor and materials furnished, maintain a lien under the general mechanic's lien law, secs. 3314 and 3315, Stats., as against individuals or corporations, cannot have the lien given by sec. 3347dd on funds due a contractor for public improvements. p. 213.

3. Sec. 3347dd, Stats., has no wider import or scope as to the nature and kind of the claim concerned than is to be given to sec. 3327a as herein defined.  p. 215.

4. Items not allowable either under sec. 3327a, Stats., against the surety on a bond given on a contract for public work, or under sec. 3347dd, providing for the *pro rata* payment of withheld balances on public work:

(a) Amounts due for coal used as fuel to run boilers generating steam for excavating hoists, running concrete mixers, and heating sand and gravel used in construction.  p. 215.

(b) Charges for gasoline and oil used in operating motor trucks.  p. 215.

(c) Purchase price of cars and picks.  p. 216.

(d) Rentals for machinery used on work, and charges for repairs and for broken parts not returned to owner.  p. 216.

(e) Balance of purchase price of machinery.  p. 216.

(f) Amounts due as premiums for insurance under the workmen's compensation act.  p. 218.

5. Items allowed:

(a) The claim of one who was employed nominally as general superintendent of the contractor at an annual salary, but whose work consisted mainly of manual labor.  p. 217.

(b) The claim, both as to principal and interest, of a subcontractor who agreed to do the digging and back-filling of ditches.  p. 220.

6. A claim for premiums due for workmen's compensation insurance which the contractor and its surety agreed to carry, *held* not allowable against the latter or the fund due the contractor as one for work, labor, or material, within sec. 3327a, Stats., the surety not having agreed to assume or pay any incurred liability therefor.  p. 218.

7. A bond given under such a statute as sec. 3327a by a public works contractor may provide for a broader obligation against the surety than is provided by statute.  p. 219.

8. The Metropolitan Sewerage Commission, with which a contract for the construction of a sewer was made, was properly allowed attorney's fees in an action by the surety for the adjustment of its liabilities, though no claim was made nor any affirmative relief granted as against the commission other than for distribution of the balance due, as under the contract the contractor and surety agreed to indemnify the commission against all actions and costs and expenses in defending them. p. 219.

*On rehearing.*

9. A subcontract for sewer excavation and back-filling having required that charges by parties thereto against each other be agreed on in advance and written minutes thereof made and signed, the evidence is *held* not to show that the subcontractor waived such provision or was estopped from asserting it. p. 226.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Reversed and modified.*

August 24, 1922, defendant *Metropolitan Sewerage Commission,* a body created by the legislature and duly authorized so to do, entered into a written contract for the construction of a main sewer in Milwaukee county at a price of some $100,000 with the Mid-West Construction Company and the plaintiff as surety. Work proceeded under such contract until October 5, 1923, when the contractor gave formal notice of its inability to continue, defaulted, and became bankrupt. Thereafter the plaintiff as such surety continued and completed the work at an expense of about $3,600. About $26,000 of said contract price was withheld by the *Commission* after such default.

By the written contract the Construction Company agreed: "To furnish all the materials, tools and plant, and to perform all labor necessary to complete the work."

The plaintiff as surety agreed: "That the said contractor shall and will well and truly execute and perform this agreement . . . and truly pay on demand to said *Commission* any and all damages and sums of money which the said contractor shall be liable to pay to the said *Commission* under this contract."

The contractor and sureties agreed: "To protect the *Commission* against compensation to the employees of said contractor or surety or employees of any subcontractor under them" as provided in the "workmen's compensation act;" also "to indemnify and save harmless the *Commission* from . . . and against any and all claims and liabilities, actions and causes of action, costs, charges, and mechanics' liens, for labor performed or tools and material furnished in the construction of the work, and any and all costs, charges, and expenses incurred in defending such suits or acts, or procuring such liens to be discharged and satisfied."

The *Commission* was expressly authorized to retain from the contract price all amounts which may be expended by it for work done or materials furnished in carrying out any of the work done which the contractor failed so to do, etc., and all amounts which it may be necessary to pay for labor, tools, plant, and materials engaged and used upon the construction of the work and for which the contractor has failed to pay, . . . and all other sum or sums as by the terms of said agreement, or by any act of the legislature then in force, it is or may be authorized to reserve or retain.

This action was brought to have determined and adjusted all questions of liability of the plaintiff as surety under the said contract to any claimants and for the proper distribution of the balance of the purchase price withheld by the *Commission.* A large number of claimants were made defendants, cross-complaints interposed, various issues raised, and other actions started and consolidated herewith. After trial judgment was entered disallowing certain of the claims, allowing a number of others not here questioned, directing the *pro rata* distribution among certain claimants of the balance of the contract price that had been withheld by the *Commission,* and directing judgment against the plaintiff. in favor of several of the claimants for the balance of their adjusted claims left unpaid after such *pro rata* distribution.

The plaintiff appeals from so much of the judgment as related to certain of the claims, and *Gerrit T. Thorne* and

*Hunter Machinery Company,* claimants, seek to review certain parts of said judgment.

*Joseph E. Tierney* of Milwaukee, for the appellant.

For the respondent *Metropolitan Sewerage Commission* there was a brief by *Albert B. Houghton* of Milwaukee.

For the respondent *McKenzie* there was a brief by *Mc-Govern, Hannan, Devos & Reiss* of Milwaukee.

For the respondent *Mertes Machinery Company* there was a brief by *Connell & Weidner* of Milwaukee.

For the respondent *Hunter Machinery Company* there was a brief by *William J. Morgan* of Milwaukee.

For the respondent *Wisconsin Mutual Liability Company* there was a brief by *Roehr & Steinmetz,* attorneys, and *Julius E. Roehr,* of counsel, all of Milwaukee.

For the respondent *Topp Oil & Supply Company* there was a brief by *Raymond J. Cannon* of Milwaukee.

For the respondent *Lindsay, McMillan Company* there was a brief by *John W. McMillan* of Milwaukee.

For the respondent *Austin* there was a brief by *Otjen & Otjen* and *Ottomar Kloetzner,* all of Milwaukee.

For the respondent and cross-appellant *Thorne* there was a brief by *Lines, Spooner & Quarles* of Milwaukee.

The cause was argued orally for the respondents by *John W. McMillan, Ottomar Kloetzner, Charles B. Quarles,* and *H. K. Curtis,* all of Milwaukee.

The following opinion was filed January 13, 1925:

ESCHWEILER, J.   The contract in question and the obligation of the plaintiff surety as to the several claims here involved require the consideration of two separate provisions found in ch. 289, Stats., entitled "Liens," namely: sec. 3327*a,* providing for the form of contract, bond to be given, and remedy thereon in contracts involving public works; and sec. 3347*dd,* providing for the *pro rata* payment to claimants out of any withheld balances on account of public work.

The substantial issue between the parties here is as to what may or may not be allowed as within such respective

statutes, and particularly as to an amendment in 1917 of said sec. 3327*a*.

Prior to ch. 388, Laws of 1917, sec. 3327*a* provided, in substance, that contracts let for the erection, construction, equipment, repairs, protection, or removal of *any building* of *the state* shall contain provision for the payment by the contractor of all claims for labor and materials, and the giving a bond conditioned for the faithful performance of the contract, and the payment of all the claims for work or labor performed and materials furnished in and about the erection, construction, equipment, repairs, protection, or removal of such building to each and every person entitled thereto. It also then, as now, contained provisions, not material here, for the bringing of an action against the contractor and the surety to recover any such liability. Such statute had been repeatedly construed by this court and held that it afforded to those who had been engaged in the kind of work therein designated for the state no other or greater right, so far as the kind or nature of the work done or materials furnished was concerned, than was afforded under the general lien statute found in the same chapter for those who performed work or furnished materials or supplies in and about contracts by individuals or corporations; it being established doctrine that public funds such as were involved in work done for the state, and the same applied to municipal or *quasi*-municipal corporations, were not, in the absence of specific legislative consent and authority, subject to the remedies in the nature of garnishment or equitable impounding of the same.

In *Wisconsin Brick Co. v. National Surety Co.* 164 Wis. 585, 160 N. W. 1044, the history of this then section was given and its intention declared to be that the remedy thereby provided went no further as to kind or nature of claims than did the general mechanic's lien remedy. In that case it was also held that neither under the statute nor the bond there given pursuant thereto were railroad freight charges for transporting of materials which were used in the con-

struction, on behalf of the state, of two buildings for the University, recoverable against the surety on such bond; declaring also that such railroad company would clearly not be entitled to a mechanic's lien for such a charge, and that it had waived its common-law lien for freight charges as a carrier by the delivery of the material without prior payment. A similar conclusion as to freight charges for transporting brick for city pavement was reached in *Union T. Co. v. Standard B. Co.* 112 Kan. 774, 213 Pac. 169, 30 A. L. R. 464, with note at p. 466.

At the close of the opinion in the *Wisconsin Brick Co. Case, supra,* decided January 16, 1917, at page 589 it was said: "If we are wrong in our construction of the legislative intention, our error can be readily and easily corrected by the legislature itself."

February 12, 1917, a bill proposing an amendment of said sec. 3327a was introduced. So far as deemed material for consideration here, it proposed striking out the words *"erection, construction, equipment, repairs, protection or removal of any building of the state,"* and inserting in lieu thereof the following: *"performance of any work or labor or furnishing any materials when the same is of any of the classes or cases or of the character enumerated in section 3314 of the statutes [the general mechanic lien law], and when the same pertains to and is for or in or about any public building, public improvement, public road, alley or highway, or other public work of the state, or of any county, city, village, town, school district, or of any public board or body."* A substitute amendment followed which struck out of the clause above quoted from such original amending bill the words *"when the same is of any of the classes or cases or of the character enumerated in section 3314 of the statutes, and . . ."* Such changes were in the act, ch. 388 of 1917, as finally passed. Another change was made in the statute so far as affecting the liability of the contractor and the surety by substituting for the provision in the old section

*supra,* *"and the payment of all the claims for work or labor performed, and material furnished in and about the erection, construction, equipment, repairs, protection or removal of such building, to each and every person or party entitled thereto,"* by now providing in lieu thereof the phrase *"of all the claims for work or labor performed, and materials furnished for or in or about or under such contract."* Respondents here contend for the view held by the trial court that by such amendment, ch. 388 of 1917, there was an enlargement not only of the classes or kinds of principals or owners, but also a substantial widening of the classes or kinds of possible liens.

Emphasis is laid in such construction upon the provision appearing in said amendment that the remedy is for work or labor performed and materials furnished *"for or in or about or under such contract,"* and that in the substitute amendment and the act as passed there was dropped out the provision that appeared in the original bill, viz. *"the classes or cases or of the character enumerated in section 3314 of the statutes,"* arguing that thereby it was intended to substantially widen the field of such claims against public bodies from that which had been defined and marked out in the *Wisconsin Brick Co. Case, supra;* and that such was an expression of a legislative intent to thereby respond to the suggestion made in the *Brick Co. Case* and above quoted.

We are satisfied, however, that the amendment of 1917 was not intended to have the effect for which respondents contend. This statute has two separate and distinct parts or elements; one defining or expressing that for which the remedy is given, the other defining or describing those against whom or the property against which it is given; a change as to the one not at all necessarily implying an intention to change the other. There was here an unmistakable and expressed intent to change as to the kind of public works the public bodies and funds as to which and against which such remedy was not to apply, but no such expressed intent

to change the other element or part of the ·statute.    The latter remains as before, viz. *work, labor, and furnishing of materials;* nothing is added to these; they ·are not broadened or extended; and the delimitation or definition of them as given in the *Wisconsin Brick Co. Case, supra,* is in no wise, expressly at least, changed, though that was the precise element of the statute to which the suggestion in that case was pointed.    The dropping out of the phrase, *"the classes or cases or of the character enumerated in section 3314 of the statutes,"* descriptive of the work, labor, and materials element, by the substitute amendment and the bill as enacted, was clearly for brevity only, they being already exactly so defined by judicial decision.    The phrase "for or in or about such contract," while perhaps tautological, is clearly descriptive only, and tied up only with the element or part of the statute which recites· or defines the new and much broader field of public works concerning which such a contract may be now made, but it in no wise points to, expands, or broadens the "work, labor, or materials" side of the statute.    Moreover, the use of such phrase last above quoted is a saving over what would be a needless repetition of the itemized list of the public works, public bodies, and public funds now brought into the statutes.

We are therefore of the opinion that so far as here concerns the nature and substance of any of the claims presented, no further right can be recognized under the present law than was under the construction given to the former statutes in the *Wisconsin Brick Co. Case, supra,* and as was again said, upon the amended statute, in *Webb v. Freng,* 181 Wis. 39, 194 N. W. 155, where, though the precise point here raised was not argued, this court adhered to its former construction.    We see no reason why we should now ·overrule those cases or depart from such construction.    This result has at least the virtue of consistency, in giving the words "work, labor, and materials" the same meaning wherever they appear in the same chapter.

The other statute here involved, sec. 3347*dd*, was created by ch. 289 of 1921, and provides for liens on, and the distribution of, funds due contractors for public improvements (except as to cities of the first class) ; the language for consideration reading:  "Any person, firm or corporation furnishing any material, apparatus, fixtures, machinery or labor to any contractor for public improvements in this state . . . shall have a lien on the money or bonds or warrants due or to become due such contractor for such improvements."

From its consideration we are of the opinion that it is intended to have no wider import or scope as to the nature or kind of the claim concerned than is to be given to sec. 3327*a*, *supra*, as here defined, or secs. 3314, 3315, in the general mechanic's lien law.  That is to say, one who could not, from the nature of his claim, maintain a lien under sec. 3314 as against the owners involved in that section, cannot have any relief as provided for in sec. 3347*dd*.

Upon the foregoing determination as to the scope of the two statutes and upon the contract itself, we shall now dispose of the several claims here involved, grouping, for brevity, some of them.

### *Fuel and oil.*

*Abe S. Austin, Jr.,* was allowed $472.05 for coal furnished and used as fuel to run the boilers which generated steam for the hoists used in excavating ditches for the sewer and for running the concrete mixers and heating sand and gravel used in the construction.  The *Lindsay, McMillan Company* was allowed $121 and the *Topp Oil & Supply Company* $210.25 for gasoline and lubricating oil in operating the motor trucks.

We think that all these items must be disallowed under the view we have taken of the statutes under which they were asserted and allowed in the court below.  The exact question, so far as coal used as fuel in the operation of machinery engaged in construction work is concerned, was decided under the general lien statutes, secs. 3314, 3315, and

it was held that, being used only to facilitate or make possible the operation of tools or machinery which in their turn act upon the structure, cannot be the subject of a lien, in *Carnegie Fuel Co. v. Interstate T. R. Co.* 165 Wis. 46, 160 N. W. 1046, citing, among other cases, *Schultz v. C. H. Quereau Co.* 210 N. Y. 257, 104 N. E. 621, which also, under a similar statute, denied a lien for coal. That lubricating oil used on mill machinery is not lienable was held in *Standard Oil Co. v. Lane,* 75 Wis. 636, 44 N. W. 644.

### Machinery.

The *Mertes Machinery Company* was allowed the purchase price of cars and picks, aggregating $28, and a balance for rental of hoists and a concrete mixer used on the work of $432.66, together with a charge of $26.25 for broken parts of such machinery not returned. The *Hunter Machinery Company* was allowed $300 as rental for a concrete mixer furnished to be used and used in the construction. This latter company seeks by its motion to review to have allowed the sum of $200, balance of the sale price of a boiler furnished for use in the construction of the sewer, and a further item of $17.50 for repairs on said boiler.

We think all of these several items on these two claims must be disallowed. They are clearly parts of the outfit of machinery with which the contractor undertakes to do the work. While by the express language of the contract the Construction Company was to furnish tools and plant as well as materials and labor, yet the tools and plant, among which these several items are clearly included, manifestly refer to the outfit with which such contractor is expected to enter upon the construction work and to take with him when he leaves, as distinguishable from the materials and labor which go into and become a part of the structure upon which the work is done. It was so held in *McAuliffe v. Jorgenson,* 107 Wis. 132, 82 N. W. 706, where a claim for a lien was denied to the owner of a well-boring machine hired to a contractor in the construction of a well.

The subject is again discussed quite at length and the distinction again pointed out between materials which go into the structure and appliances such as engines, derricks, steam shovels, etc., which as tools are expected to be used again and again, in *Barker & S. L. Co. v. Marathon P. M. Co.* 146 Wis. 12, 19, 130 N. W. 866, 36 L. R. A. N. S. 875. Rent for a steam shovel was denied as a lien claim and the general subject discussed in *Troy Public Works v. Yonkers,* 207 N. Y. 81, 100 N. E. 700, and again in *Gates & Co. v. Stevens C. Co.* 220 N. Y. 38, 49, 115 N. E. 22. Staging used in painting and plastering held an appliance and not lienable in *Bay State D. & C. Co. v. W. H. Ellis & Son Co.* 235 Mass. 263, 266, 126 N. E. 468. See, also, *Southern S. Co. v. Municipal E. Co.* 61 Okla. 215, 160 Pac. 617, and *McMillan v. Joseph P. Casey Co.* 311 Ill. 584, 143 N. E. 468.

## *Labor.*

*Daniel McKenzie,* whose claim was allowed at $3,425, was employed by the Construction Company at a salary of $500 per month. This claim is contested by appellant on the ground that *McKenzie* was an executive officer rather than an employee and that his services do not come within the proper meaning of the term "labor" as used in either of the sections involved. His testimony in effect was that he was general superintendent on that job; his duties consisted in directing the men on the work, telling them what to do and how to do it; that he himself did all kinds of work that was to be done; he hauled sand and stone and concrete; helped run the mixer; set and pulled sheathing; he started at 6:30 in the morning and had no regular hour for quitting at night, being there at times until midnight; that his work consisted mainly of manual labor.

While much of the services rendered by *McKenzie,* and especially when considered in connection with the substantial compensation of $500 per month, might well be considered as taking him out of the class of labor and placing him in the same situation as would be one of the general officers of

the corporation itself, nevertheless he was not 'such officer, but an employee of the Construction Company, and in view of the liberal construction that is to be given to such statutes we do not feel warranted in overturning the conclusion arrived at by the trial court that this claim may be properly allowed. Such a view as to one performing both superintendence and manual labor was upheld in *Flagstaff S. M. Co. v. Cullins,* 104 U. S. 176.

### Premiums for compensation.

The claimant *Wisconsin Mutual Liability Company* was allowed $2,788.04 due it from the contractor on account of premiums for insurance under the workmen's compensation act.

The contractor and the plaintiff surety agreed, under the express language of this particular contract, to assume the burden of carrying this form of compensation and liability insurance and incurred liability in this undisputed amount to this claimant in so doing. The surety, however, did not agree to assume or pay any incurred liability in that regard. We think that this item is not one for work, labor, or material or within the purview of sec. 3327a. Such was the ruling under a similar statute in *Bay State D. & C. Co. v. W. H. Ellis & Son Co.* 235 Mass. 263, 267, 126 N. E. 468, and which we prefer to follow rather than the case *contra,* cited by claimant, of *Crowell L. & G. Co. v. Ryan Co.* 110 Neb. 225, 193 N. W. 609.

Neither can the allowance of this claim be upheld as contended, under the language of sub. (1), sec. 102.28, Stats., reading, "any claim for unpaid compensation insurance premiums shall be entitled to the same preference in bankruptcy or insolvency proceedings as is given by any law of this state or by the federal bankruptcy act to claims for labor," as found in the chapter on workmen's compensation, for the reason that this is not the bankruptcy or insolvency pro-

ceedings therein mentioned, it being a conceded fact that the Construction Company did go into bankruptcy.

Neither can the claim be upheld under the recent decision in *Building Cont. L. M. L. Ins. Co. v. Southern S. Co.* 185 Wis. 83, 200 N. W. 770. There an obligation for such premiums was upheld as against the surety upon a bond executed, it is true, in compliance with this same statute, sec. 3327a, for public works, but with express terms and conditions which were in excess of and beyond the statutory requirements, and upon which terms and conditions the case was decided. That a bond given under such a statute may, by its provision, create a much broader obligation against the surety than that provided for by the statute, is well illustrated in *Hansen v. Remer* (Minn.) 200 N. W. 839. This claim, therefore, must be disallowed.

### Metropolitan Sewerage Commission.

The *Commission* with which the contract in question was made was allowed $810 as attorneys' fees on account of the litigation here involved. Appellant contends that, there being no claim made against the *Commission* and no affirmative relief granted as against it other than for a distribution of the balance conceded by it to be due under the contract, the surety cannot be properly charged with such an item of expense.

Under the contract, however, both the contractor and surety agreed to indemnify the *Commission* from and against all actions and causes of action and any and all costs, charges, and expenses incurred in and defending any such suits or acts.

The *Sewerage Commission* was unquestionably a proper and necessary party in this action in order that it may properly be required to pay and be protected in paying the balance in its hands. It necessarily, being so made a party by the plaintiff itself, appeared in said action to preserve

and protect its interests. The expense and charges in connection with such services are clearly within the language of the contract and may be properly deducted by the *Commission* from the amount that was left in its hands and as directed by the court below.

### *Subcontractor, Thorne.*

*Gerrit T. Thorne* was allowed $3,425 as a labor claim, which appellant contests on the ground that claimant, being a subcontractor rather than a laborer, is not entitled to a lien. The claimant, by notice of review, seeks to have the amount of his claim increased.

*Thorne* made a written contract with the Construction Company on the same day the principal contract was made, whereby he undertook, for the agreed price of $23,000, to do the digging and back-filling of the ditches for the iron pipe and concrete sewers provided for in the main contract. This subcontract provided that the work thereunder should be done by a ditching machine and a clam-shell bucket machine, each then owned by claimant and adapted for such purpose. During the progress of the work tunneling was substituted for the open ditching specified in the original subcontract and the court allowed a credit to the Construction Company for such change; and also for labor in cutting down the corners of the bottom of the trenches.

While a subcontractor may, as well instanced here, stand in the same relationship to the principal contractor that the latter does to the owner and more perhaps as a substitute as to his branch of the work for the principal than as a third person, and in a relationship separate and distinct from that of laborer or materialman and a subcontractor of a subcontractor be not entitled to a lien under secs. 3314 and 3315 because not therein designated, all as pointed out in *Farmer v. St. Croix P. Co.* 117 Wis. 76, 83, 85, 93 N. W. 830, yet we have here, by sec. 3327a, a provision which gives, as against the bond required thereunder on public work, the

same relief to the same persons who under secs. 3314 and 3315 would have relief against the property of a private owner. This claim of *Thorne* was therefore properly held a lienable one in the court below.

On the issue raised by *Thorne* in his review of the adjustment of the account with the Construction Company as determined below, we cannot say that the findings are not sufficiently supported by the evidence and they must stand.

We can see no reason, however, why interest should not have been allowed on this claim, as is here contended for by claimant, and such should be added to his allowance.

This disposition of the claims will necessitate such changes in the *pro rata* distribution of the fund paid into court by the *Commission* and other matters such as to require a return of the record to the court below that such may be there done, rather than here.

*By the Court.*—Judgment reversed, and cause remanded with directions to modify as herein directed. Appellant to have one bill of costs as against the claimants who interposed cross-complaints. Claimants successful here to have costs against appellants.


The following opinion was filed June 22, 1925:


On a motion for rehearing in this action on appeal, the court granted a rehearing on the claim of *Gerrit T. Thorne,* and submitted a question to the attorneys for the respective parties for briefs, as follows: "Should a credit of $2,719.20 have been allowed the Mid-West Construction Company?"

The court has reconsidered this proposition. The Mid-West Construction Company and *Gerrit T. Thorne* entered into a contract as follows:

"This agreement, entered into this 24th day of August, 1922, between the Mid-West Construction Company of Milwaukee, Wisconsin, party of the first part, and *Gerrit T.*

*Thorne* of 6422 Yale Ave., Chicago, Illinois, party of the second part.

"Whereas, the party of the first part has entered into a contract to put in 1961.77'-34" C. I. Pipe siphon sewer and 5887.71 feet of 4' concrete sewer on the Watertown Plank Road in Milwaukee county; and whereas the party of the second part has machinery adapted to doing the excavating and back-filling for said sewers, to wit: An O Austin trenching machine special that cuts 84" wide which he is to place on said job, also an Orton & Steinbrenner caterpillar clam-shell crane with clam-shell bucket:

"Now, it is hereby agreed by the party of the first part that it will pay party of the second part the agreed sum of twenty-three thousand dollars ($23,000) for digging and back-filling the ditches for the cast-iron pipe, and concrete sewer, and doing such other work as hereinafter stated.

"For the purpose of estimating payments to be made, the following rule shall be followed:

"One dollar ($1) per foot for all 24" cast-iron pipe for which ditch is dug, and three dollars ($3) per lineal foot for all ditch dug for 48" pipe, and fifty cents ($.50) per lineal foot for all 48" pipe back-filled. Payments to be made every two weeks from time work is commenced, balance to be paid when work is completed.

"The second party is to excavate a ditch about 42" wide and as deep as required for the cast-iron pipe, and sink down boom for bell holes when and where requested to do so, and for the four-foot pipe he is to dig a ditch eighty-four inches wide and as deep as required; where square bottom is required, second party will put on wheels so as to dig ditch as nearly flat as possible.

"When on account of having no place to put the dirt it is necessary to take the dirt away with a truck, the second party is to hold the trenching machine until a truck can be placed under the conveyor by the first party, and then he will proceed to dig, running said dirt into the truck to be taken away and dumped.

"The second party is to load all surplus dirt in trucks with the clam-shell so it can be taken away by first party.

"When by reason of wetness or for any other reason the ditch cannot be dug with the ditching machine, or if it caves

in, or if it has to be sheeted by first parties in order to maintain same, second party will use the clam-shell bucket to take the dirt out of the ditch.

"So far as any of the work that is to be done under this contract is concerned, it is to conform to requirements of the specifications of the *Metropolitan Sewerage Commission.*

"It is understood and agreed that if rock is encountered it is to be removed by first party, also all obstructions encountered, such as concrete roads, brick pavements, or other material that cannot be excavated with a ditching machine or clam-shell bucket, is to be excavated by first party at its own expense. Wherever sewers, water pipes, gas pipes, railroads, or other obstructions are encountered, they are to be removed by first party or jumped over by second party, and second party will excavate same with the clam-shell bucket; but whatever hand work is necessary to be done shall be done by first party, and all work that can be done with the ditching machine and drag-line crane shall be done with said machines. Said clam-shell crane is to be used in every way possible to assist in the doing of the work to be done in building said sewer, including the removal of rock after blasting.

"Second party agrees to put machinery on job as follows: In case he is not delayed by strikes or acts of God over which he has no control, the machine which cuts forty-two inches wide can be put on job before September 1st and the machine that cuts eighty-four inches wide can be placed on the job about September 10th, possibly before. In case first parties wish to commence four-foot sewer before the big machine arrives, second party will dig the ditch with the forty-four inch machine and cut down the sides of the ditch at his own expense to meet the requirements up to eighty-four inches wide.

"In case the work is delayed so that it freezes up before work is stopped, then in that event first party is to protect said work against frost or put it in a condition so second party's machinery can be operated.

"The parties to this contract are to co-operate in every way possible to make said work a success and shall not cause each other any unnecessary delay. Neither the first party nor the second party shall make any charges against the other

for any work done on this job except as it may be expressly agreed upon in advance and a written minute made of it by the parties and signed by them.

"First party to carry the public liability insurance on said work; second party to carry employer's liability insurance on his employees.

"MID-WEST CONSTRUCTION COMPANY,
"By M. D. Dervoz, Pres.
"GERRIT T. THORNE.
"In presence of P. W. Silverwood."

A dispute arose between *Thorne* and the Mid-West Construction Company over a claim by the Construction Company, amounting to $2,719.20, for the payment of two men employed by the Construction Company for the purpose of back-filling and squaring up the bottom of the trench. The trial court found:

"That the defendant *Gerrit T. Thorne* agreed with the Mid-West Construction Company to credit the Mid-West Construction Company for the time of two men employed by the Mid-West Construction Company for the purpose of back-filling, and that the total amount of credit due the Mid-West Construction Company* for these men is the sum of $2,719.20."

The appellant, *Southern Surety Company,* appealed from the judgment in favor of *Thorne,* and *Thorne* filed a cross-appeal to review the judgment in so far as it disallowed his claim for $2,719.20.

CROWNHART, J. An examination of the contract between *Thorne* and the Mid-West Construction Company fairly discloses that *Thorne* had machinery for digging sewer trenches, and that he agreed to dig certain trenches by the use of this machinery. The contract provided that—

"Where square bottom is required, second party [*Thorne*] will put on wheels so as to dig ditch as nearly flat as possible."

The contract further provided:

"But whatever.hand work is necessary to be done shall be done by first party [Mid-West Company], and all work that

can be done with the ditching machine and drag-line crane shall be done with said machines."

And, finally, the contract provided:

"Neither the first party nor the second party shall make any charges against the other for any work done on this job except as it may be expressly agreed upon in advance and a written minute made of it by the parties and signed by them."

The Mid-West Company furnished certain men to square up the bottom of the trenches and to do certain hand work required in the back-filling of the trenches, and made claim against *Thorne* in the settlement for part payment by *Thorne* of these men, which claim was allowed by the trial court.

There was no claim that any memorandum was made by the parties with reference to these charges, but the court found that *Thorne* agreed with the Construction Company to credit it with the charge.

From our examination of the evidence it appears that there was more or less discussion on the part of the Mid-West Company about this claim, but *Thorne* consistently denied liability. The only testimony to the contrary is that by Dervoz, president of the Mid-West Company, who said: "I told him [*Thorne*] that I thought it was fair to divide the expense and he said it was all right." But he had preceded this statement with the answer: "He [*Thorne*] didn't have nothing to say that he was going to pay for it." And again: "He says, 'I will pay whatever is right.'"

This conversation *Thorne* denies. We think the contention that *Thorne* agreed to any credit for the men so employed is contrary to the weight of the evidence and against the reasonable probabilities. As was said in *Davis v. La Crosse H. Asso.* 121 Wis. 579, 585, 99 N. W. 351:

"There would be, then, little or no use of making a written contract at all, containing such guards, because if one were made, the court, upon a controversy thereunder occurring, would look to what was in fact done and test the contract by that instead of testing what was done by the contract in de-

termining the legal rights of the parties. There is, at times, rather too much of a tendency to do that, the court acting as a mere arbitrator instead of judicially giving to each party his legal rights. Parties must be left to make their own contracts, and without any protection from improvident provisions embodied therein, in the absence of clear evidence of a modification or some relievable fraud or mistake."

Here the party, by extra precaution, inserted in the contract, in order to avoid any dispute later on, that neither party should make any charge against the other for work done on the job, except as it might be expressly agreed upon in advance and a written minute made of it by the parties and signed by them. It would seem to be altogether useless to make a written contract if the parties are not to be bound by it. As was said in the *Davis Case, supra,* p. 585:

"In the circumstances before us, a provision should not be deemed waived in the absence of clear and satisfactory evidence showing such to have been the intention of the parties, or showing an estoppel *in pais.*"

We are of the opinion that there is no clear and satisfactory evidence in this case that *Thorne* waived the provisions of his contract, or that he is estopped from relying upon the contract.

The trial court should have disallowed the claim of the Mid-West Construction Company, and should have allowed *Thorne's* claim under his contract.

*By the Court.*—The judgment of the trial court, reducing *Thorne's* claim by $2,719.20, is reversed, with directions to enter judgment increasing the allowance to *Thorne* in the sum of $2,719.20.