WEBB and others, Respondents, vs. FRENG and others, .
Appellants.

*May 2—June 5, 1923.*

*Mechanics' liens: On public work: Bonds: Protection of material-
men: Overpayment by county: Effect on surety's liability:
Lienable items: Lumber used for shoring and concrete forms:
Depreciation.*

1. Under sec. 3327a, Stats. (providing that contracts for public
   work shall contain a provision requiring the contractor to pay
   labor and material claims and to give a bond therefor; that
   no assignment or modification of the contract, or change in
   the work covered thereby, nor any extension of time for
   completion of the contract shall release the sureties on such
   . bond; and that any party in interest may in his own name
   maintain an action on the bond), where the sureties on the
   bond of a contractor for the construction of a county building
   subscribed to covenants for the protection of materialmen
   as required by the statute, the materialmen could enforce the
   contract made for their benefit.
2. A clause in the contract providing for the payment of ninety
   per cent. of the proportionate value of the work done monthly
   as the work progresses and that the county retain the remain-
   ing ten per cent. until completion and acceptance, and further
   providing that money so withheld be not paid until it is
   assured that no mechanics' liens exist against the building,
   was a material part of the contract; but a violation thereof,
   though available to the sureties on the contractor's bond in an
   action between the original parties to the contract, cannot be
   urged by the sureties to absolve them of liability on their
   bond for payment of liens duly filed by persons furnishing
   material for the construction of the building.
3. Sureties are favored in law and are entitled to stand on the
   strict terms of their obligations.
4. In actions to enforce liens, materials used by a contractor as
   mere appliances, tools, or equipment, and which may be used
   again in the construction of other buildings or structures, are
   not materials for which a lien can be enforced.
5. Where lumber is used by a contractor for shoring and thereby
   materially loses its identity or fitness for future use, evidence
   is admissible to show the quality and character of the de-
   preciation; and the amount for which a lien may be claimed
   for the furnishing of such lumber is the value of such ma-
   terial, less the value of so much as is not consumed.

APPEAL from a judgment of the county court of Trempealeau county: E. F. HENSEL, Judge. _Modified and affirmed._

This is an action brought by various materialmen against a contractor and his sureties. It was alleged in the complaint that the county board of Trempealeau county and the trustees of the county asylum for the insane advertised for bids for the construction of certain additions to the asylum; that defendant _Lee_ was the lowest bidder and was awarded the contract; that the trustees required him to furnish a bond in the sum of $17,279.97, the amount of his bid, for the faithful performance of the terms of the contract; that by the terms of the bond it was intended that the bond should stand as security and be for the benefit of all persons performing labor or furnishing materials to said _Lee_ in or about the erection or construction of the work described in the contract, and to secure to them the payment of all claims against _Lee_ for such labor and materials. It was then alleged that certain materials had been furnished for which payment had not been made.

The sureties demurred for the reason "that it appears upon the face of the complaint that the same does not state facts sufficient to constitute a cause of action." The demurrer was overruled, and an answer was filed denying liability for the materials furnished.

During the trial the defendant sureties moved to amend the answer to allege that the county failed to withhold ten per cent. of the contract price as provided in the contract, and that it paid to _Lee_ over $1,000 more than was authorized by the contract without consent of the sureties.

The sureties offered to produce evidence to show the overpayment and also offered to show that lumber purchased by the contractor and used for concrete forms and scaffolds was removed or sold by the contractor. The court refused to allow the answer to be amended and also refused to allow the testimony to be given.

The condition of the bond was as follows:

"The condition of the above obligation is such that if the parties named in the within contract as 'the party of the first part' shall well and faithfully perform all of the conditions contracted to be performed by said 'party of the first part,' as by the terms of said contract stipulated, without fraud or delay, and shall pay all bills for labor and material incurred therein, then this bond to be void and of no effect; otherwise to remain in full force and virtue."

Sec. 3327a, Stats., provides that all contracts for the doing of any public work of the state, county, etc., shall contain a clause providing "for the payment by the contractor of all claims for such work and labor performed and materials furnished, and no such contract shall hereafter be made or let unless the contractor shall give a good and sufficient bond, the penalty of which shall not be less than the contract price, conditioned for the faithful performance of the contract, and the payment to each and every person or party entitled thereto of all the claims for work or labor performed, and materials furnished for or in or about or under such contract."

It also provides that:

"No assignment, modification or change of the contract, or change in the work covered thereby, nor any extension of time for completion of the contract shall release the sureties on said bond.

"Any party in interest may, within one year after the completion and acceptance of said contract, maintain an action in his own name against such contractor and the sureties upon such bond required by this section for the recovery of any damages he may have sustained by reason of the failure, refusal or neglect of said contractor to comply with the aforesaid terms and conditions of said contract or any of the terms and conditions of the contract between said contractor and subcontractors."

At the close of the testimony the court instructed the jury to find a general verdict in favor of the plaintiffs.

For the appellants there was a brief by *J. Reese Jones* of Osseo, and oral argument by *Mr. Jones* and *Mr. G. O. Linderman* of Eau Claire.

For the respondents there was a brief by *Cowie & Hale* of La Crosse, and oral argument by *Quincy A. Hale.*

JONES, J.   The first question presented is whether the complaint states a cause of action against the sureties on the bond.   It is argued by counsel for appellants that it appears from the contract and the bond that the sureties were liable to the county only; that the bond was given to protect the county in case of the failure of *Lee* to perform his contract, and that it is only in this connection that the word "sureties" is used in the contract; that in case of default the bond provided that payment should be made *to the county;* that this view is supported by the language in the contract that if he should neglect or refuse to furnish the materials the county should have the right to do the work and furnish the materials; that the sureties were to become liable only in the event that the county should have to take over the contract and a deficiency should arise; and for that deficiency only.

This contention does not give sufficient consideration to the very plain language in the bond which required the contractor not only to faithfully perform the conditions of the contract but also to "pay all bills for labor and materials incurred therein."   There is no doubt that it was competent for the sureties to make a contract for the benefit of third persons who might become interested by furnishing material for the building and that such persons could enforce the contract thus made for their benefit.

This question has several times been raised and decided by this court.   In *R. Connor Co. v. Ætna Ind. Co.* 136 Wis. 13 (115 N. W. 811), it was said (p. 20):

"Since the bond secured payment by the contractors for the material used in the construction of the building, it was

therefore a contract between the district and the parties thereto for the benefit of those persons furnishing material to be used in the construction of the building.   Under such circumstances the third party need not be ascertained or known at its inception to entitle him to the benefits thereof. The third party may adopt it when he becomes informed, and may enforce it at law as if originally made by his express authority."   *U. S. G. Co. v. Gleason,* 135 Wis. 539, 116 N. W. 238.

The statute referred to in the statement of facts indicates the policy of the state that those furnishing materials for the class of public buildings therein mentioned shall be protected, and the bond was evidently given for that purpose.

Counsel for the sureties contend that there was error in the refusal of the court to receive evidence tending to show that they were released from liability because ten per cent. of the proportionate value of the work done was not retained, as provided by the contract, until the work was completed. It was provided that the gross sum was to be paid as follows:

"Ninety per cent. of the proportionate value of the work done, monthly, as the work progresses, on the estimates of the superintendent, such estimates to include value of materials delivered on the grounds for the building work, and the remaining ten per cent., together with all other sums, if any, due on this contract, shall be paid on the completion and acceptance of the entire work as herein contracted for or as soon thereafter as the party of the second part is satisfied that said work is completed, and are assured against the existence of mechanics' liens on said buildings; provided, however, that no material shall be estimated or paid for until wrought into the construction of the building."

It is undoubtedly true that such a clause in a contract is a material one.   Overpayment may remove the incentive to the contractor to diligently press his work.   The sureties may also be prejudiced by the diminution of the fund in the owner's hands which may serve as a means of protecting

sureties from liability.  *Kunz v. Boll,* 140 Wis. 69, 121 N. W. 601; *Lowe v. Reddan,* 123 Wis. 90, 100 N. W. 1038; *Cowdery v. Hahn,* 105 Wis. 455, 81 N. W. 882; *Stephens v. Elver,* 101 Wis. 392, 77 N. W. 737.

It is also true, as argued by counsel, that sureties, especially gratuitous sureties, are favorites of the law and have a right to stand upon the strict terms of their obligation when ascertained.  *W. W. Kimball Co. v. Baker,* 62 Wis. 526, 22 N. W. 730.

These familiar rules might be quite effective if this were an action brought by the county against the sureties, but it is an action by those who furnished materials, and they rely on the statute quoted in the statement of facts.  When that statute was enacted the legislature was doubtless familiar with the fact that, through the insolvency or mismanagement of contractors, materialmen had often suffered heavy losses. In view of the fact that they could not file liens against municipalities, the legislature sought by enacting this statute to afford relief in such cases.  By providing that no change of the contract or in the work or extension of time should release the sureties they intended that the statute should cover such acts as are here complained of.  *Conn v. State,* 125 Ind. 514, 25 N. E. 443; *Duluth v. Heney,* 43 Minn. 155, 45 N. W. 7; *Steffes v. Lemke,* 40 Minn. 27, 41 N. W. 302; *U. S. F. & G. Co. v. American B. Co.* 41 Ind. App. 620, 84 N. E. 555; *U. S. v. National S. Co.* 92 Fed. 549, 34 C. C. A. 526; *Chaffee v. U. S. F. & G. Co.* 128 Fed. 918, 63 C. C. A. 644; *U. S. v. California B. & C. Co.* 152 Fed. 559; *Getchell & Martin L. & M. Co. v. Peterson,* 124 Iowa, 599, 615, 100 N. W. 550; *School District v. Livers,* 147 Mo. 580, 49 S. W. 507; *West Duluth v. Norton,* 57 Minn. 72, 58 N. W. 829; *Kaufmann v. Cooper,* 46 Neb. 644, 65 N. W. 796; *Des Moines B. & I. Works v. Marxen,* 87 Neb. 684, 128 N. W. 31; *Barritt S. King & Co. v. Murphy,* 49 Neb. 670, 68 N. W. 1029; *Doll v. Crume,* 41 Neb. 655, 59 N. W. 806.

It appeared that some of the lumber furnished by the

plaintiff *Webb* was used for shoring or forms for the concrete and for scaffolding. Counsel for defendants sought to prove that some of this lumber was removed from the premises by the contractor and sold or otherwise used by him, and all proof of this kind was rejected. In *Wis. B. Co. v. National S. Co.* 164 Wis. 585, 160 N. W. 1044, the statute now involved was construed, and it was held that it gives no more extensive right than that furnished by the mechanics' lien law, and that it gives no remedy to any different persons, but that the remedy is coextensive with the remedy afforded by that law. It is well settled that, in actions to enforce liens, materials used by a contractor as mere appliances or tools or equipment, and which may be used again in the construction of other buildings or structures, are not materials for which a lien can be enforced.

The rule is different if the materials have lost their identity or fitness for future use to any material extent. *Barker & Stewart L. Co. v. Marathon P. M. Co.* 146 Wis. 12, 130 N. W. 866. In *Moritz v. Sands L. Co.* 158 Wis. 49, 146 N. W. 1120, lumber used for shoring was furnished the contractor and it was found that seventy-five per cent. of it was consumed in the construction of the building and could not be used again; that twenty-five per cent. of the lumber furnished was not entirely consumed, but that it had become depreciated in value. The amount of this depreciation was determined and a lien was allowed for the amount of the depreciation of the twenty-five per cent., and the seventy-five per cent. actually consumed. On this point that decision seems to rule the present case.

It may be that if the proof had been received it would have appeared that the lumber removed or sold was of little value. On this subject we can express no opinion since the evidence bearing on the question was excluded.

We hold that the exclusion of this evidence was prejudicial error, and that the cause should be remanded with directions to take testimony as to the value of the materials

used for shoring and scaffolding in the building provided for by the original contract, and the amount of the depreciation of the portion so used and not consumed. After taking such testimony the plaintiff *Webb* should be allowed in the judgment for the lumber so consumed as shoring and scaffolding and the percentage of depreciation of that so used and removed or sold, and not for the value of the entire amount used in shoring and scaffolding. As to the other plaintiffs the judgment is affirmed.

*By the Court.*—Judgment modified as to plaintiff *Webb;* and as to the other plaintiffs affirmed; and cause remanded for further proceedings as indicated in this opinion.