FIDELITY & DEPOSIT COMPANY OF MARYLAND, Respondent, vs. MILWAUKEE-WESTERN FUEL COMPANY and another, imp., Appellants. [Two appeals.]

*October 13, 1926—January 11, 1927.*

*Principal and surety: Contractor's bonds on public work: Not given construction broader than statute: Materials limited to lienable items: Implied promise of contractor to pay: Fuel and lubricants furnished.*

1. A public construction contract and a bond, given pursuant to sec. 289.16, Stats., must be construed as one instrument, though the surety guaranteed performance by joining with the contractor in executing the contract instead of executing the bond in strict conformity to the language of the statute. p. 504.
2. The fact that such bond is broader than sub. (1), sec. 289.16, Stats., in some particulars cannot benefit a person furnishing "materials," within the meaning of the contract and the statute, which has been construed in *Southern Surety Co. v. Metropolitan S. Comm.* 187 Wis. 206, as including only lienable materials. pp. 504–507.
3. Coal, gasoline, kerosene, oil, and grease furnished to the contractor are *held* not within the meaning of a bond guaranteeing payment for "materials" furnished, so as to render the surety liable therefor. p. 507.

Appeals from a judgment of the circuit court for Milwaukee county: G. N. Risjord, Judge. *Affirmed.*

Suit by the plaintiff company for a determination of its liability under a bond given to secure the performance of a construction contract. On the 15th day of January, 1923, the Metropolitan Sewerage Commission, hereinafter called the Commission, entered into a contract with a copartnership known as the Balliet Construction Company, whereby the latter agreed to furnish materials, labor, tools, and plants to do all of the work necessary for the construction of a sewer. For completion of the contract the contractor was to receive $297,725. The plaintiff company on the same day executed the contract as surety. Thereafter the contract was assigned to John M. Balliet with the consent of all parties. Thereafter the work was completed. Balliet failed and neglected to pay certain claims which were filed with the commission under the provisions of sec. 3347*dd*, Stats. 1921, now sec. 289.53. Balliet was adjudged a bankrupt, and this action was begun for the purpose of requiring all parties who had claims on account of work, labor, or services performed or materials furnished under the contract to file their claims, to appear in this action to the end that all matters relating to the subject of the action might be adjudicated and that a fund remaining in the hands of the commission in the amount of $16,787.03 might be applied in accordance with the final determination of the court. Among other claimants was the *Milwaukee-Western Fuel Company,* hereinafter styled the *Fuel Company,* and *Lindsay-McMillan Company.* It appears that the *Fuel Company* furnished to the contractor coal in the amount of $4,813.20, which was used in operating the machinery necessary for carrying on the work. The *Lindsay-McMillan Company* furnished gasoline, oil, kerosene, and grease in the amount of $4,008.06, which was likewise used in connection with

the operation of the plant necessary for carrying on the work.

The court found that the coal furnished by the *Fuel Company* and gasoline, kerosene, oil, and grease furnished by the *Lindsay-McMillan Company* were actually used and consumed in doing the work under the contract, but denied the appealing defendants recovery on the ground that the materials furnished by them were not included within the terms of the bond, and from the judgment entered accordingly the *Fuel Company* and the *Lindsay-McMillan Company* appeal.

For the appellant *Milwaukee-Western Fuel Company* there were briefs by *Fawsett, Smart & Shea,* attorneys, and *C. F. Mikkelson,* of counsel, all of Milwaukee, and oral argument by *Mr. Mikkelson.*

*John W. McMillan* of Milwaukee, for the appellant *Lindsay-McMillan Company.*

For the respondent there was a brief by *Bottum, Hudnall, Lecher & McNamara* of Milwaukee, and oral argument by *Geo. B. Hudnall.*

The following opinion was filed November 9, 1926:

ROSENBERRY, J.   The material parts of the contract, bond, and collateral documents are as follows:

The instructions to bidders contained the following:

"The bidder to whom the contract may be awarded will be required to execute and deliver a contract to which an approved surety or sureties shall become a part, in a sum equal to the amount of the contract—in the form hereto attached—to the secretary of the Metropolitan Sewerage Commission."

The proposal submitted by the Balliet Construction Company contained the following:

"The undersigned further agrees that they . . . will enter into a contract and furnish the sureties required to do all

this work and furnish all the material, tools, labor, and plants of whatever kind or nature required for the satisfactory completion of said intercepting sewer with all appurtenances thereto."

The introductory paragraph of the contract was as follows:

"Articles of agreement, made this 15th day of January, 1923, by and between Balliet Construction Company, hereinafter called the Contractor, and Fidelity and Deposit Company, Baltimore, Md., hereinafter called Sureties, and the Metropolitan Sewerage Commission of the county of Milwaukee, hereinafter called Commission."

The contract also contained the following provisions:

"(A) . . . Wherever the word "surety" or "sureties" is used, it shall refer to and mean the party or parties guaranteeing the performance of the work to be done."

"(G) The contractor and sureties shall indemnify and save harmless the commission from all claims for labor performed, or materials, tools, and plant furnished, and to furnish the chief engineer with satisfactory evidence, when called for, that all persons who have done work or furnished tools, plant, or materials have been fully paid and satisfied.

"(KK) In consideration of the letting of this contract to said contractor, the sureties for itself, its successors or assigns, or for themselves, their heirs, executors, and administrators, as the case may be, hereby guarantee, covenant, and agree to and with the commission that the said contractor shall and will well and truly execute and perform this agreement."

Sec. 289.16 provides:

"(1) All contracts involving one hundred dollars or more hereafter made or let for the performance of any work or labor or furnishing any materials when the same pertains to or is for or in or about any public building, public improvement, public road, alley or highway, or any other public work of whatsoever kind of the state, or of any county, city, village, town, school district, or of any public board or body, shall contain a provision for the payment by the contractor of all claims for such work and labor performed and

materials furnished, and no such contract shall hereafter be made or let unless the contractor shall give a good and sufficient bond, the penalty of which shall not be less than the contract price, conditioned for the faithful performance of the contract, and the payment to each and every person or party entitled thereto of all the claims for work or labor performed, and materials furnished for or in or about or under such contract," etc.

The purpose of the statute is stated in *Webb v. Freng,* 181 Wis. 39, 194 N. W. 155. In *Baumann v. West Allis,* 187 Wis. 506, 204 N. W. 907, it was the contention of the surety that, the surety having contracted that the contractor would well and truly execute and perform the contract and the contract containing no clause by which the contractor agreed to perform all of the work and labor and furnish the materials necessary for the completion of the building, the surety could not be held liable for his failure in that regard. It was held, however, that the statute was imported into the contract and that the contract was therefore as broad as the statute.

In *Building Cont. L. M. L. Ins. Co. v. Southern S. Co.* 185 Wis. 83, 200 N. W. 770, it was held that a contract and a bond given pursuant to sec. 289.16 must be construed as one instrument. That the surety in this case, instead of executing the bond in strict conformity to the language of the statute, guaranteed performance of the contract by joining with the contractor in the execution of the contract, is not a material circumstance. The legal relationship in the two cases is identical.

In *Southern S. Co. v. Metropolitan S. Comm.* 187 Wis. 206, 201 N. W. 980, 204 N. W. 476, under a bond given in accordance with the provisions of sec. 3327a (sec. 289.16), it was held that persons performing labor or furnishing materials for the erection and repair of public works acquired no greater right against the contractor and surety than was afforded by the general lien statute against the individuals

or corporations so far as the kind of labor or nature of the work done or materials furnished was concerned, and that the amendment of 1917 (ch. 388, Laws 1917) merely enlarged the class of public work to which the statute was applicable and did not change the provisions which were construed in *Wisconsin B. Co. v. National S. Co.* 164 Wis. 585, 160 N. W. 1044.

It is the claim of the appealing defendants that the agreement of the surety in this case is not coextensive with the statute, but that the provisions of the contract in this case have a greater scope or extent than does the statute. In *Building Cont. L. M. L. Ins. Co. v. Southern S. Co., supra,* it was held that parties may make valid contracts which are broader than the statute. In that case the contractor agreed to maintain liability insurance sufficient to protect the owner against all claims for damages or injury to persons engaged upon the work, and the bond provided "that the principal shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same." It was held that the bond and contract should be construed together, and the surety was held liable for the amount of premiums for compensation insurance which had been incurred in performing the contract. The respondent urges that this case is ruled by *Southern S. Co. v. Metropolitan S. Comm.* 187 Wis. 206, 201 N. W. 980, 204 N. W. 476, in which it was held that a surety guaranteeing the performance of an agreement "to furnish all the materials, tools, and plant, and to perform all labor necessary to complete the work," assumed no greater liability than was imposed by the statute, and that individuals furnishing materials for which no lien was given by ch. 289, Stats., had no right of action against the surety. The surety in that case had agreed "that the said contractor shall and will well and truly execute and perform this agreement . . . and truly pay on demand to said commission any

and all damages and sums of money which the said contractor shall be liable to pay to the said commission under this contract."

The language in the instant case is:

"(F) The contractor agrees to furnish all the materials, tools, and plant and to perform all labor necessary to complete the work contemplated in this agreement to the satisfaction and acceptance of the commission. . . .

"(G) The contractor and sureties shall indemnify and save harmless the commission from all claims for labor performed, or materials, tools, and plant furnished, and to furnish the chief engineer with satisfactory evidence when called for," etc.

As set out in the statement of facts, the agreement of the surety is that it guarantees, covenants, and agrees to and with the commission that the contractor shall and will well and truly execute and perform the agreement. It is to be noted that the language of the contract is almost identical with the language of sub. (1) of sec. 289.16. However, the appealing defendants argue that the case is not governed by *Southern S. Co. v. Metropolitan S. Comm., supra,* because the question of whether or not the contract was broader than the statute was not considered or determined in that case. The subject principally discussed in the case of *Southern S. Co. v. Metropolitan S. Comm.* was the statute, and that was for the reason that the contract itself was in the language of the statute and the claimants endeavored to sustain their contention in that case by arguing that the amendment broadened the statute, and because the statute had been broadened the contract was more inclusive and so included non-lienable claims. After consideration of the provisions of the statute the court said: "Upon the foregoing determination as to the scope of the two statutes *and upon the contract itself,* we shall now dispose of the several claims here involved;" and in disposing of the claim of the Wisconsin

Mutual Liability Company, one of the defendants, it was pointed out that a bond given under and pursuant to the statute might by its provisions create a much broader obligation against the surety than that provided for by the statute, citing *Hansen v. Remer*, 160 Minn. 453, 200 N. W. 839. The very proposition made here was made in that case, but the argument made to sustain it was based mainly upon the construction of the statute for the reasons stated. Stating the claim of the appealing defendants in the language of one of the briefs, it is said:

"No such bond [as that required by statute] was executed in this case. The surety in this case, by becoming a party to the contract itself, agreed to do what the contractor failed to do. It 'guaranteed the performance of the work to be done' and agreed that the contractor would 'well and truly execute and perform this agreement.' It agreed that:

" '(E) . . . The contractor and sureties shall be held liable for any damage to person or property which may arise from injury or alleged injury through failure of the contractor or his agent to fully protect his work in the manner aforesaid.'

"No such obligation or provision is required under sec. 3327a (sec. 289.16).

"The surety further agreed that all persons who did work or furnished tools, plant, or materials should be fully paid and satisfied.

"The surety further agreed to indemnify and save harmless the commission from and for any damage or loss due to the negligence of the contractor or his agents or due to the action of the elements or due to improper or defective work, and agreed to indemnify and save harmless the commission from and against all claims, liabilities, actions, costs, expenses in defending actions, royalties, license fees and costs or damages for infringements of inventions," etc.

No such obligation or provision, it is argued, was required under sec. 3327a (sec. 289.16). If it be held that the bond is in some particulars broader than the statute, the claimants

Fidelity & D. Co. v. Milwaukee-Western F. Co. 191 Wis. 499.

in this case cannot benefit thereby. The appealing defendants furnished materials. This is the word used in the statute and in the contract, and in the former case was held to include only lienable materials. If the surety went farther and indemnified the commission against loss in the particulars enumerated, that in no way enlarged the meaning of the word "materials" as used in the contract.

It is further argued that an undertaking by a contractor to furnish certain materials implies a promise to pay therefor, and *Yawkey-Crowley L. Co. v. Sinaiko,* 189 Wis. 298, 206 N. W. 976, is cited in support of the contention. In that case by the terms of the bond the contractor was required to furnish a bond conditioned for the faithful performance of all the work provided for in the contract as well as against mechanics' liens for labor and materials, and the materials furnished in that case, for which it was held the surety under the bond was liable, were lienable materials. The materials to be furnished by the contractor in the present case are all materials, tools, labor, and plant, of whatever kind or nature, required for the satisfactory completion of said intercepting sewer, but this is construed in the *Southern Surety Company Case, supra,* as not including non-lienable materials. If non-lienable materials were included, no doubt a promise to pay therefor would be implied. The trial court therefore correctly held that the surety was not liable for the coal furnished by the *Fuel Company* or the gasoline, kerosene, oil, and grease furnished by the *Lindsay-McMillan Company* under its guaranty.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on January 11, 1927.