DANIELS LUMBER COMPANY, Appellee, v. OTTUMWA SUPPLY & CONSTRUCTION COMPANY, Appellee; SOUTHERN SURETY COMPANY, Appellant.

**BONDS:** **Statute of Limitation—Completion of Work.** Where a statutory provision declares that action may not be brought on the bond of a contractor "after six months of the completion" of a public improvement, the improvement will be deemed *completed* when the contractor has substantially performed on the improvement all that he contracted to perform, and has turned it over to the public authorities; and it is immaterial that controversy exists as to extras, or that trifling defects or shortcomings afterwards come to light, or that the formal certificate of acceptance was delayed.

Headnote 1:   9 C. J. p. 443 (Anno.)

*Appeal from Davis District Court.*—D. M. ANDERSON, Judge.

JULY 1, 1927.

REHEARING DENIED OCTOBER 1, 1927.

Action against a contractor and its bondsman for material furnished for the construction of a bridge. The case was tried

to the court, without the intervention of a jury, and judgment entered in behalf of the plaintiff for the amount of its claim. The surety company alone appeals.—*Reversed.*

*Payne & Goodson,* for appellant.

*C. H. Elgin* and *Buell McCash,* for appellee.

FAVILLE, J.—On or about the 15th day of May, 1922, a contract was entered into between Davis County and the Ottumwa Supply & Construction Company for the construction of certain bridges and culverts, which are known in the record as "Bridge Project No. 116," consisting of bridges and culverts numbered 1 to 36, inclusive. The appellant was surety on the bond of said contractor to the county. The appellee furnished certain material to said contractor, and this action is brought to recover therefor from the bondsman, under the provisions of Chapter 347 of the Acts of the Thirty-eighth General Assembly. As provided by Section 2 of said act, the appellee filed a verified and itemized statement of its claim with the county auditor within sixty days after the last item of material was furnished.

I.  It is the contention of the appellant that the action is barred under the provisions of said section, which provides that "no such action shall be brought on said bond after six months of the completion of any public improvement or building." It appears without dispute in the evidence that the last work on the improvement in question was done on August 6, 1923. This was on a bridge known in the record as No. 8. The false work was removed, the approaches to the bridge were graded, and thereafter the bridge was used continuously by the public. The appellant pleaded the limitation of the statute. This action was commenced July 29, 1924. The important and material inquiry is with regard to the date of the "completion of the improvement." Various estimates were delivered to the contractor from time to time, and partial payments were made as the work progressed. There was evidence that, after August 6, 1923, the contractor was claiming that he was entitled to compensation for extras, and there is also evidence to the effect that the engineer was not wholly satisfied with the condition of a portion of the work as left by the contractor. On November 11, 1924, a meet-

ing was held at Ames, Iowa, where the interested parties were present, and an adjustment was finally made, by which an allow-- ance was made to the contractor for certain extras claimed by him, and a deduction of $25 was made for the estimated expense of remedying claimed defects in the construction of the work. Shortly thereafter, on December 1, 1924, the board of super- visors and the highway commission issued a written "certifica- tion as to completion of work and final acceptance by board and commission," in which it is stated that the work under the con- tract "was completed in accordance with plans and specifica- tions and in a satisfactory manner on November 1, 1923, and is approved for final payment." There is evidence to the effect that, sometime later, and after appellant had raised the question of the statute of limitations in this action, the engineer took up the matter of said certificate with the board of supervisors and highway commission, and another certificate was issued, identical in form with the first, except stating that the contract was com- pleted on November 1, 1924. The contract was made with refer- ence to the standard specifications for highway, bridge, and cul- vert construction, as fixed by the state highway commission, and said specifications contained the following:

"The contractor shall remove all false work, excavated ma- terial or useless materials, replace or renew any fences damaged, and leave the premises in a condition satisfactory to the board and engineer. All excavated material or false work placed in the stream channel during construction shall be removed by the contractor before final acceptance of the work is made.

"The engineer shall make final inspection upon notification by the contractor's foreman that the work is completed. If the work is not acceptable to the county engineer he shall advise the contractor as to the particular defects before the crew is moved from the work."

No objection appears to have been made to any of the work done on the project by the county engineer after August 6, 1923, until about the time of the meeting at Ames, on November 11, 1924. On or about August 6, 1923, the foreman of the contractor was directed by the engineer to do certain work in pointing up rough places in the cement floor, and this was done at that time, the forms were removed, and the steel painted. The crew was removed from the work on or about that date. A final estimate

was tendered to the contractor on November 27, 1923, which he refused to accept, because of his contention that he should be paid for extras. No claim or demand was made upon the contractor for any defects in the work at that time.

The question for our determination at this point is the fact question as to when the work on the improvement was "completed." It is not a question of when the work was finally accepted. The board has issued two certificates, one fixing the date of completion as November 1, 1923, and the other as November 1, 1924. The certificates do not determine the fact as to when the improvement was completed. There is nothing in the statute that required or even authorized the board of supervisors to issue any such certificates regarding the completion of the improvement. Certainly the time of bringing action against the bondsman, under the statute, cannot be either shortened or extended by recitals in a certificate of this kind with regard to the time of "completion of the improvement." It is what in fact happened that is essential,—not what the board may have certified about it, that governs the rights of the parties to this action. If the board had never made any certificate, it would not have affected the statutory requirement that the action must be brought within six months "of the completion of the improvement."

The rights of the appellee as against this appellant are fixed by the terms of the statute as it then existed, and the question was a question of fact as to when the work had been completed, —not a question as to whether it had been finally accepted, or whether the contractor had been paid, or whether a disputed claim for extras had been adjusted, or when or what the board of supervisors may have certified. At this point, it is a matter of interest that the statute has since been amended by the insertion of the words "final acceptance," in what is now Section 10313, Code of 1924. But no such provision was in the statute at the time this action accrued.

The trial court made a finding of facts, and, as shown, thereby attached great significance to this certificate by the board of supervisors and the highway commission. The good faith of the board in making or correcting the certificate is not involved here.

If it be conceded, for the sake of the argument, that the

certificate was admissible in evidence (and upon this question we reserve pronouncement), it by no means follows that the certificate is conclusive on the fact question of the date of completion of the improvement. There is a claim that "the pony-truss bridge" was not complete; but the chief and important contention is that, after the bridge was constructed, it developed that there was a strip of cement about ¾ of a foot wide and about 16 feet long that was rough or honeycombed. The evidence shows that it would take about half a sack of cement and sand, in proportion, to resurface this work, and make it smooth, instead of rough. It is quite evident from the record that this condition became apparent after all of the work on the bridge was done and the contractor had turned the same over, as completed. It is to be noticed at this point that the question here does not arise between the contractor and the county. It is a question of fixing the date for the running of the statute of limitations as to a third party. As we have pointed out, under the statute as it existed at that time, the question of final acceptance of the work by the board of supervisors or state highway commission is not involved in the case. The question of the statute of limitations as between the parties to this action is to be determined by the common and general use of the word "completed," as contemplated by the statute. Whether there could be a question of liability for defective work or for damages as between the contractor and the county is not the question at this point. The statute, for the purposes of the question involved, as between these parties, must be construed in a broad and liberal manner, and not narrowly nor technically. To all intents and purposes, the improvement was a completed improvement in August of 1923. The contractor had left the work. The public were using the road. No complaint had been made to the contractor that the work had not been fully done. A final estimate of the balance due under the contract had been rendered to the contractor. Had it accepted it at that time, and been paid, as the county offered to pay it, little question could be raised that the contract had not been "completed,"—at least so far as the parties to this action are concerned. The only thing that delayed the payment to the contractor was apparently not any claim of "incompleteness" in the improvement, but was the claim for extras on the part of the contractor. So far as the parties to this suit are con-

cerned, so far as the purpose and intent of this statute is involved, this work was "completed" when the contractor had done all that it undertook to do. If "defects afterwards developed," if some of the work done by it was not up to the requirements of the contract, and it could be held liable therefor by deduction from the contract price or in damages, this did not affect the question of the running of the statute of limitations, as between these parties.

It is contended that the work was not completed, because of the provisions of the plans and specifications that "the contractor shall remove all false work, excavated material, or useless materials, replace or renew any fences damaged, and leave the premises in a condition satisfactory to the board and engineer." The contention at this point is that some loose lumber and other material was not removed in August of 1923, and for some time thereafter, and that, therefore, the contract was not completed. The statute does not make the right of recovery of this appellee against the appellant depend upon the completion of the contract in regard to incidental matters of this kind. By the terms of the statute, this action cannot be brought on the bond "after six months of the completion of any public *improvement or building*." As between the appellant and the appellee, the statute began to run when the improvement was completed, even though some other incidental matter which the contractor agreed to do had not been performed. The removal of the loose boards, etc., that had been used in the construction, and that had been left upon the side of the highway, although it may have been provided for in the contract, had nothing whatever to do with the "*completion of the improvement or building*." In other words, "completion of the *improvement*," under the statute in question, might be a very different thing from completion of the *contract*. The contract might have bound the contractor to do many things, as restore fences, remove lumber, cut weeds, etc., and yet, under this statute, "the *improvement*" would have been "completed" although the *contract* had not.

It is also significant that, under the specifications which were a part of the contract, it is provided that, "if the work is not acceptable to the county engineer, he shall advise the contractor as to the particular defects before the crew is moved from the work," and that, to the knowledge of the engineer, and

without objection on his part, the crew was removed from the work in August of 1923.

We are constrained to· hold that the trial court erred in applying the evidence in the case to the proper construction of the statute, and that, under the undisputed evidence, when so applied, the appellee's action was barred. Other questions argued by appellant need no consideration. The judgment is— *Reversed.*

Evans, C. J., and Stevens, Vermilion, Albert, and Kindig, JJ., concur.