GUARANTEED GRAVEL & SAND COMPANY AND OTHERS v.
AETNA CASUALTY & SURETY COMPANY.[1]

May 4, 1928.

Nos. 26,662, 26,657, 26,658, 26,659, 26,660, 26,661, 26,663, 26,664.

**High school building was not completed 90 days prior to service on surety of plaintiffs' claims for material furnished.**

1.  G. S. 1923, § 9705, construed as referring to the "completion of the building" and not to the "completion of the contract." The doctrine of Johnson v. Laurence, 171 Minn. 202, is not controlling as between the surety and creditors of a public contractor.

The evidence is sufficient to sustain a finding that the construction of the building was not completed 90 days prior to the service of the notice pursuant to § 9705.

**As between surety and creditors of public contractor the contract must be strictly performed.**

2.  As between the surety and creditors of a public contractor the doctrine of substantial performance has no application; there must be strict performance of the contract.

**What is necessary to constitute acceptance of building by school board.**

3.  An acceptance of a building by a school board does not require

[1]Reported in 219 N. W. 546.

the formal acceptance by motion or resolution passed by the board in session. It does require an act with intent to receive the building as its own as a compliance with the required duty of the contractor.

**Exclusion of evidence was proper.**

4. There was no error in the exclusion of evidence.

**Amended statute construed to include insurance as well as premiums.**

5. G. S. 1913, § 8245, was enlarged by L. 1923, c. 373, to include "insurance premiums," which is construed to include insurance.

**Public contractor's contract and bond incorporate statutory provisions whether specified or omitted in language used.**

6. The purpose of the parties to furnish a public contractor's contract and bond within G. S. 1923, § 9700, being established, it cannot be defeated by a failure to write into the contract and bond one of the provisions of the statute whether such omission was due to the voluntary act of the parties or attributable to their oversight or inadvertence. In such a situation the contract is made in reference to the law which imputes its provisions to the contract whether written therein or not.

Schools and School Districts, 35 Cyc. p. 960 n. 70, 73, 74, 75; p. 961 n. 76 new.

Eight actions in the district court for Waseca county by plaintiffs as subcontractors to recover of the surety upon the bond of the contractor, Carlsted Brothers. Upon appeal the cases were consolidated and submitted upon one record and one set of briefs. There was judgment in each case for the plaintiffs, from which the defendant appealed. Affirmed.

*Cobb, Wheelwright, Hoke & Benson,* for appellant.

*H. W. Volk,* for respondents American Tile & Marble Company, Natural Slate Blackboard Company and George Hauenstein.

*Thompson, Hessian & Fletcher,* for respondents Julius and Charles Henning.

*Mead & Bryngelson,* for respondent Builders Mutual Casualty Company.

*T. O. Streissguth,* for respondents Karl H. and Herman J. Aufderheide and Guaranteed Gravel & Sand Company.

*O. A. Brecke,* for respondent Belt Line Brick Company.

WILSON, C. J.

There are eight appeals from judgments against appellant in eight separate actions which have been consolidated in this court. With two exceptions, which will be mentioned, the cases are controlled by the same record.

In 1923 the high school building in Waseca was destroyed by fire. On October 30, 1923, the board made a contract with Carlsted Brothers for the construction of a new schoolhouse at the price of $254,993. As surety to a public contractor within G. S. 1923, § 9700, appellant became a third party to the contract.

The contract required the work to be completed on January 1, 1925. Subsequently the board agreed to pay $4,000 additional if classes could be held in the new building on October 1, 1924. This was done.

All the plaintiffs, except the Builders Mutual Casualty Company, which furnished workmen's compensation insurance, furnished the contractor building materials which entered into the construction of the building.

1. No action shall be maintained on a public contractor's bond unless within 90 days after the completion of the contract and acceptance of the building by the proper public authorities the plaintiff shall serve upon the principal and his sureties a written notice specifying the nature and amount of his claim and the date of the last item thereof. G. S. 1923, § 9705.

The several plaintiffs served notices between May 19 and June 30, 1925, inclusive, in an effort to comply with the statute. Were the notices timely and seasonably served? The trial court said they were. Because of appellant's claim that a contrary inference of law results from the established facts, we will state the facts and circumstances which it is claimed show the "completion of the contract and acceptance of the building."

The use of the building for classes increased from October 1, 1924. The additional $4,000 was paid. The work continued through October. The contractor's men had left the job by October 17. On October 28 representatives of the architect, the board and the con-

tractor inspected the building. All agreed that the contractor was to meet the following:

"[1] Cement floor guarantee. [2] Roof guarantee by subcontractor countersigned by Carlsted Brothers. [3] Make all Astral window top sash reversible. [4] Painting — Paint diffuser blades, boiler room and fan room work, footwarmer ducts, oil gym floor, touch up Astral notches.[5] Blackboard — complete in Physics [room] and room 103. [6] Lead down footscrapers. [7] Get iron plate to put on door at door stops. [8] Stops for gym balc. doors. [9] Deliver six outside door keys and get six extra Van Gurpin dogging keys. [10] Make statement of unpaid accounts. [11] Tie up attic hanger (furring). [12] Tighten friction arms on casement sash. [13] Adjustment for face brick."

Thereupon $39,000 was paid to the contractor, leaving a balance of only $1,200.95, which was to be retained until such time as the building was completed. The value of the work and material necessary to overcome the above deficiencies was $500 to $600. On December 6, 1924, the secretary of the board, without the knowledge of the board members, wrote a letter to Smith & Wyman Company, saying: "The date that our school was accepted from the contractors, Carlsted Bros., was October 31, 1924." The board never formally or expressly accepted it. Nor did the architect give any final certificate. All the requirements specified in the above list were fulfilled by February 15, 1925, except (a) that the boiler room and area floor slabs which had cracked and through which water oozed up had never been corrected, this being what specification No. 1 had reference to; (b) plaintiffs were never paid; and (c) the roof work was not done until in August, 1925.

It is claimed that the work necessary on the roof was repair work covered by the guaranty but not due to a failure properly to construct in the first instance. This is disputed by plaintiffs. We think the evidence with special reference to a letter from J. Henning & Son to the architect supports the apparent conclusion of the trial court that the roof work was necessary because of failure

properly and completely to construct and not a necessary repair attributable to or made necessary by use.

We are of the opinion that the record presented a question of fact as to whether the contract was completed and the building accepted. As between the contractor and the school board the contract was not completed for the simple reason that the bills incurred in the work were not paid. This was necessary "for the faithful performance" of the contract; as we have heretofore said that payment for material and labor used by a contractor is an essential element of the completion of the contract. Johnson v. Laurence, 171 Minn. 202, 214 N. W. 24. A contractor who agrees to furnish certain material agrees to pay therefor. Fidelity & Dep. Co. v. Milwaukee-Western F. Co. 191 Wis. 499, 210 N. W. 713. However we have here a different situation, in that the controversy arises not between the contractor and the owner, but between the contractor's creditors and its surety. The surety has contracted to pay such creditors. Its liability is certain. In the absence of the provisions of the statute applicable, the same doctrine should apply between these parties. But the legislature has said that no action shall be maintained on this liability unless the notice above mentioned shall be given "within ninety days after the completion of the contract and acceptance of the building." To apply the doctrine of Johnson v. Laurence, 171 Minn. 202, 214 N. W. 24, to a case of this character would completely destroy the provisions of § 9705. This fact leads us to the conclusion that when the legislature used the language "completion of the contract" they intended and meant the "completion of the building." We so construe the statute. It follows that Johnson v. Laurence, 171 Minn. 202, 214 N. W. 24, is not controlling.

We conclude that the evidence supports the finding that the physical structure of the building was not completed 90 days prior to the service of the notice, nor had the contract been completed at that time. There is an obvious distinction. Daniels Lbr. Co. v. Ottumwa S. & C. Co. (Iowa) 214 N. W. 481. Because of the statute, the important element here is the former.

2. It is urged that a substantial performance of the contract was had on October 31, 1924, or at least by February 15, 1925. We

are of the opinion that in a case of this character the doctrine of substantial performance has no application. That doctrine is wholesome as applied between the owner and the contractor where abatement may be had to the owner for deficiencies on the part of the contractor. But to hold that while the work is still proceeding the acceptance of it in an incomplete state is sufficient to put in operation the 90-day limitation in the statute in actions of this character would lead to unreasonable results never within the contemplation of the legislature. Millikin Bros. Inc. v. City of New York, 201 N. Y. 65, 94 N. E. 196, Ann. Cas. 1912A, 905, 908; Colon & Co. v. Smith, 226 N. Y. 102, 123 N. E. 78. There is some analogy in Heimbach Lbr. Co. v. Spear, 140 Minn. 276, 167 N. W. 1041. In a case of this character there must be a complete, literal, strict performance of the contract.

3. Relative to acceptance of the building it is important to bear in mind that an emergency existed making the use of the building imperative, and the board was required to use it out of necessity. The parties knew this, and they knew of the deficiencies. Nobody supposed or believed that the work was at an end. While an acceptance does not require a formal acceptance by motion or resolution passed by the board in session, it does require an act with intent to receive the building as its own as a compliance with the required duty of the contractor. An acceptance may be expressed by words or by conduct. Upon the record the question was one of fact, and there is much in the case to negative the claim of acceptance. The finding that there was not an acceptance 90 days prior to the serving of the notices is sustained by the evidence.

4. Error is assigned upon the exclusion of proof under an offer to prove that the reason why the board did not formally accept the building was because its attorney advised against it. The caution of the board in seeking legal advice is amply justified by subsequent events, and the soundness of counsel's advice is affirmed by the finding of the trial court. The offer was not made in the nature of impeachment. It was of no importance in an effort to establish a record acceptance, and the importance of the incident as bearing upon an actual acceptance was trivial. The facts and circum-

stances disclosed by the record justified the advice; and if the members of the board did not know the legal effect or consequence thereof or even had or entertained an erroneous conclusion of law therefrom, such circumstance would have been entitled to no consideration by the court in deciding whether there had been an actual acceptance.

### AMERICAN TILE & MARBLE COMPANY CASE.

We have carefully examined the record and find nothing to justify our interference with the amount found to be due plaintiff.

### BUILDERS MUTUAL CASUALTY COMPANY CASE.

5. The provisions of a public contractor's bond as required by G. S. 1913, § 8245, were enlarged by L. 1923, p. 534, c. 373 (G. S. 1923, § 9700), to protect all persons "furnishing * * * insurance premiums" in furtherance of the work. Plaintiff was the insurer on a general policy of workmen's compensation insurance issued to the contractor, and the premiums due on this particular project amount to $1,000.

The point is made that the language of the statute relates to insurance premiums and not insurance, and that this may mean only money which an insurance broker has paid as premiums for the contractor. We cannot adopt this theory. We do not think the inclusion was for the benefit of insurance brokers and insurance agents only, but also for insurance companies which in fact in good faith furnish premiums or the actual equivalent thereof. Insurance premium is the consideration for the risk assumed, and it is premium just as much when furnished by an insurance company as if a broker had paid the company. It is true that plaintiff furnished the insurance, but what it has coming is the premium therefor. It trusted the contractor for the premium. It seems to us that within the intent and purpose of the statute one furnishes insurance premiums when he trusts the contractor therefor. Otherwise we would have a result that would often work an injustice and might result in peculiar detriment to mutual companies.

6. A more serious question arises in this: While the statute includes insurance premiums, the contract and bond in this case being prepared outside or at least on forms used outside the state make no mention of insurance premiums. The contract nowhere obligates Carlsted Brothers to obtain or carry insurance of any kind. The bond by its terms is for the benefit of all parties alike who supplied labor or material for the building and is conditioned for the faithful performance of the contract. Were this a common law bond the plaintiff could not prevail, because its cause of action does not come within the language of the contract.

But this is a statutory bond, which must be construed to give effect to the statutory condition if that can be reasonably done; and to that end it must be construed in the light of the statute and extended as well as limited in its scope to those cases contemplated by the statute, unless violence would be done to the language of the bond by such construction. Fairmont C. S. Mfg. Co. v. Davison, 122 Minn. 504, 142 N. W. 899, Ann. Cas. 1914D, 977.

This court said in Fairmont C. S. Mfg. Co. v. Davison, 122 Minn. 504, 509, 142 N. W. 899, Ann. Cas. 1914D, 977: "His [the surety's] obligation [in a statutory bond] is measured by the bond in connection with the statute. It cannot be extended beyond the terms of the bond." In that case however the bond contained the exact condition prescribed by the statute, and the language quoted was not intended to apply to a situation such as we now have before us.

In Standard S. & C. Co. v. National Sur. Co. 134 Minn. 121, 124, 158 N. W. 802, this language was used in reference to a public contractor's bond: "The bond is in no such sense dependent upon the statute. It is a contract. * * * Its obligation comes from contract and not from the statute and survives its repeal." But there the language of dependency upon the statute was in comparison to a mechanic's lien statute under which liens came into existence in the absence of a contract. In that case, like this, the obligation rested upon a contract. But there the court was not considering the element as to how far, if at all, the statute requiring the bond was to be read into the contract.

Bonds of this character must be construed in accordance with the general rules for the construction of written instruments. A contract in the form of a bond cannot be corrected by construction. Union S. P. Co. v. Olson, 82 Minn. 187, 84 N. W. 756. If it contains errors, corrections may be made by reformation but not by construction. Yet a bond of this character must be given a liberal construction in favor of those who make contribution to the public improvement. Fay v. Bankers Sur. Co. 125 Minn. 211, 146 N. W. 359, Ann. Cas. 1915C, 688. The surety's obligation cannot be increased by a forced construction. Smith & Wyman Co. v. Carlsted, 165 Minn. 313, 206 N. W. 450. The case of Ruthton Co-op. C. Co. v. Ruthton State Bank, 173 Minn. 255, 217 N. W. 133, involved a common law bond.

Yet these general principles cannot be controlling in reference to a statutory bond of the nature of the one now before us, when it is established and indeed necessarily conceded that the bond in question is a public contractor's bond within G. S. 1923, § 9700. Appellant's principal defense is dependent upon statutory protection applicable only to such a bond.

We are not much concerned with a number of cases cited in the brief where the courts hold a statutory bond sufficient when it omits one of the elements in the statute which is included in the contract and where the bond is conditioned for the faithful performance of the contract. That is not our case. Those cases include: Building Con. Ltd. Mut. L. Ins. Co. v. Southern Sur. Co. 185 Wis. 83, 200 N. W. 770; Fidelity & Dep. Co. v. Milwaukee-Western F. Co. 191 Wis. 499, 210 N. W. 713.

In Sepp v. McCann, 47 Minn. 364, 50 N. W. 246, the condition of such a bond limited the recovery to those who furnished labor and material to the contractor, silently excluding persons making such contribution to subcontractors who under the language of the statute were included in the protection. This court there held that the bond must be read in connection with the statute. It was expressly stated that the statute was not to override the clearly expressed intentions of the parties so as to import into the bond obli-

gations other than were intended; and it was held that it was a good bond for all persons included in the statute.

Appellant, invoking the statutory provisions for its protection, § 9705, seeks to escape the obligation of a bond furnished under § 9700, because the bond and contract did not embrace all the terms and elements of the statute. But the parties intended to comply with the statute. The contract and bond were made in reference to the statute. The purpose of the parties being established to be the same as the purpose of the statute, the joint purpose cannot be defeated by a failure to write into the contract and bond one of the provisions of the statute whether such omission is due to the voluntary act of the parties or is attributable to their oversight or inadvertence. Under such circumstances the law imputes such provisions to the contract whether written therein or not. In such a situation the contract is made in reference to the law which is read into the contract and out of which the liability arises. Baumann v. City of West Allis, 187 Wis. 506, 204 N. W. 907. The statute is a part of such contract whether embraced within the written language thereof or not; and its faithful performance means that the requirements of the law must be met.

All judgments are affirmed.