MOOSE LAKE SAND & GRAVEL COMPANY v. AMERICAN SURETY COMPANY OF NEW YORK.
STANDARD SALT & CEMENT COMPANY v. SAME DEFENDANT.
ZENITH CONCRETE GRAVEL COMPANY v. SAME DEFENDANT.[1]

July 27, 1928.

Nos. 26,791, 26,792, 26,793.

**In action on statutory bond of public contractor doctrine of substantial performance by contractor is inapplicable.**
In a suit by a creditor of a public contractor against the surety on a statutory bond which guarantees payment for material furnished and used in the work, the doctrine of substantial performance has no application. The required notices to surety were given within 90 days of the completion of the contract.

Municipal Corporations, 44 C. J. p. 353 n. 34; p. 365 n. 15.

[1]Reported in 220 N. W. 958.

Three actions in the district court for St. Louis county, tried together, to recover upon a public contractor's bond. From a judgment for the plaintiff in each case, Magney, J. the defendant appealed. Affirmed.

*Archer & Rosemeier,* for appellant.

*Alford & Hunt,* for respondent Standard Salt & Cement Company.

*Baldwin, Baldwin, Holmes & Mayall,* for respondents Moose Lake Sand & Gravel Company and Zenith Concrete Gravel Company.

HILTON, J.

Appeals from three judgments against the American Surety Company in favor of plaintiffs for the amounts indicated—Standard Salt & Cement Company, $2,342.88; Moose Lake Sand & Gravel Company, $411.05; Zenith Concrete Gravel Company, $389.69.

These three cases were tried together and on separate appeals were here argued together. Starr & Slattery, a contracting copartnership, entered into a contract with the village of Pine City on September 17, 1925, for the construction of several blocks of paving therein. Pursuant to G. S. 1923, § 9700, a statutory contractor's bond was given with the defendant, American Surety Company, as surety. Plaintiffs furnished to the contractors materials used in the work. There is no dispute as to the value thereof.

But one question is here involved: "When was the contract completed and accepted?" The surety company claimed, and its defense was, that it was completed and accepted on November 25, 1925, or at the latest on January 5, 1926. The statutory notice provided for in G. S. 1923, § 9705, was served upon the surety on March 3, 1926, by the Standard Salt & Cement Company, and by each of the other plaintiffs on June 11, 1926.

The contract was in the usual form and, among other things, obligated the contractors to build and complete the paving in a good and workmanlike manner according to the plans and specifications. It also provided that in the payment of progress estimates 25 per cent thereof was to be retained by the village until after completion of the entire contract and its acceptance by the village council. The village retained the right to reject the whole or any

part of the work. The contract contained the express provision: "Defective work shall be made good and unsuitable materials replaced even though they may have been overlooked previously by the engineer and estimated for payment. All work of whatever kind, which during its progress and before its final acceptance may become damaged for any cause, shall be removed and replaced by good and satisfactory work." The bond guaranteed the payment for all material furnished the contractors in the doing of the work specified, and a right of action thereon was given by G. S. 1923, § 9703, provided the notice to the surety company above referred to was given in time.

Shortly prior to November 25, 1925, the work was substantially finished, and on that date the village council had before it for consideration the final estimate and report of the engineer. He recommended that final payment be not made until the contractor had furnished a maintenance bond covering the work. Because some of the work was frosted and replacement thereof would be necessary in the spring, as well as reconditioning of the drainage of the gutters in certain places, the engineer advised that $1,000 be withheld to cover the cost of the work if no maintenance bond was furnished.

The evidence clearly shows that the work had not been completed in accordance with the plans and specifications. The maintenance bond later given was manifestly for the purpose of insuring completion of the job. It states that it was given to secure a contract by Starr & Slattery and to "make all repairs and renewals that may be necessary on account of defective material or workmanship," and to indemnify the "village from all suits, judgments, damages, costs, charges and expense that may accrue on account of the doing of the work specified in the said contract." Negotiations and correspondence continued between the village and the surety company until in October, 1926, at which time a settlement was made and the surety company paid $500 to the village. The foregoing more than justified the court in reaching the conclusion that the contract had not been completed 90 days before the notices were served upon the surety company.

The surety company contended that there was a substantial completion of the contract on November 25, 1925, or in any event on January 5, 1926; and hence the notices were not served in time and no liability remained. Counsel for defendant in their original brief cited numerous cases in support of that proposition. However after that brief had been written, this court, in Guaranteed G. & S. Co. v. Aetna Cas. & Surety Co. 174 Minn. 366, 219 N. W. 546, held that substantial performance is not all that is contemplated by a bond such as is here involved. That case, being also one in which the controversy was between a creditor and a surety, cannot be distinguished from the instant cases and is controlling here.

We have considered all the assignments of error; we agree with the trial judge in concluding that there had not been a final acceptance by the village 90 or more days prior to the giving of the notices.

Judgments affirmed.