**SPARTAN MECHANICAL, INC., Appellant,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Respondent.**

**No. C5–87–1023.**

Court of Appeals of Minnesota.

Oct. 27, 1987.

Review Denied Jan. 15, 1988.

James W. Littlefield, Minneapolis, for appellant.

Thomas Darling, George R. Wood, Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

LANSING, Judge.

Spartan Mechanical, Inc., subcontracted to do mechanical work in the renovation of two Minneapolis schools and brought this action against St. Paul Fire & Marine Insurance Company to recover on the surety bond issued by St. Paul Fire & Marine to the general contractor of the projects. At the close of Spartan's case-in-chief and again at the conclusion of the trial, St. Paul Fire & Marine moved to dismiss Spartan's claim on the ground that Spartan had failed to comply with the notice requirements of Minn. Stat. § 574.31 (1984). The trial court ordered judgment dismissing Spartan's action for failure to provide timely notice of its claim, and Spartan appeals. We reverse and remand for further proceedings.

## FACTS

In 1980, Spartan subcontracted to perform mechanical work on the renovation of the Tuttle School and the John Ericsson School, both owned by Minneapolis Special School District No. 1. As required by Minn.Stat. § 574.26 (1980), the general contractor obtained from St. Paul Fire & Marine a bond covering both projects. Spartan admits having completed its work on both projects by December 1982, and the trial court found that "all contract work on the school was completed in 1983." By August 1983, Spartan was aware that both schools had been occupied and used for their intended purposes since sometime in 1982.

Spartan did not file a notice of claim on either project until June 28, 1984. Although no final certificate of payment had been authorized on either project, the trial court concluded that Spartan had failed to give timely notice and dismissed its claim on that ground. This appeal followed.

## ISSUE

Do the facts support the trial court's conclusion that Spartan failed to give timely notice under Minn. Stat. § 574.31?

## ANALYSIS

The trial court found as facts: (1) all contract work on the schools was completed in 1983; (2) by August 1983, Spartan had notice that the buildings were being occupied and used for their intended purposes; and (3) Spartan did not file a notice of claim until June 28, 1984. In its incorporated memorandum, the trial court further noted that "all that remained before the contracts could be fully closed out was the final resolution of some accounting issues."

Spartan does not challenge those findings, and they are supported by the record.

The trial court did not make a specific finding on the acceptance of the projects by the school district, but its memorandum implies that acceptance was "inferred from the use of the building and the surrounding circumstances." Because "acceptance" triggers the notice requirement of Minn. Stat. § 574.31, the issue on appeal is the proper interpretation of "acceptance" under that statute.

■ Under Minn.Stat. § 574.31, no action can be maintained against a surety on a contractor bond unless the claimant files a written notice of the claim

> within 90 days after the completion of the contract and acceptance thereof by the proper public authorities * * *.

Although strict compliance with this notice provision is a condition precedent to the maintenance of an action against the surety, the 90–day statute of limitations does not begin to run until there has been both completion *and* acceptance of the project. *Alexander Construction Co., Inc. v. C & H Contracting, Inc.*, 354 N.W.2d 535, 538 (Minn.Ct.App.1984) (citing *Wheeler Lumber Bridge & Supply Co. v. Seaboard Surety Co.*, 218 Minn. 443, 447, 16 N.W.2d 519, 521 (1944)).

In the memorandum accompanying its order, the trial court relied on *Guaranteed Gravel & Sand Co. v. Aetna Casualty & Surety Co.*, 174 Minn. 366, 371, 219 N.W. 546, 548 (1928), for the proposition that acceptance does not require a formal motion or resolution but, rather, can be inferred from the use of the building and the surrounding circumstances. Noting the absence of any specific contract language on the issue of acceptance[1] and that the

---

1. Although neither party briefed the issue, we note that certain paragraphs of the contracts between the school district and the general contractor, as set forth in the project proposals for the schools, do refer to the question of final acceptance. For example, article 9.5.5 of American Institute of Architects Document A201–1976, which contains the general conditions of the contracts of both school projects, provides:

> No Certificate for a progress payment, nor any progress payment, *nor any partial or en-*

> *tire use or occupancy of the Project* by the Owner, *shall constitute an acceptance* of any Work not in accordance with the Contract Documents.

(Emphasis added). In addition, article 9.9.1 of AIA Document A201–1976 provides:

> Upon receipt of written notice that the Work is ready for *final* inspection and *acceptance* * * *, the Architect will promptly make such inspection and, when he finds the Work acceptable under the Contract Documents and

buildings in question had been fully occupied before Spartan filed its claim and only accounting issues remained before the contract could be closed, the trial court concluded that Spartan's failure to give timely notice barred its claim.

The evidence on which this conclusion was based is sparse. Allen Johnson, construction coordinator for the Minneapolis public schools, testified on direct examination that (1) both projects were still "on hold" and not completed; (2) final certificates of payment had not been issued nor final payment made; and (3) no papers were on file indicating acceptance of the projects.

On cross-examination, however, Johnson admitted that the Tuttle School project was completed sometime in 1983 and that only one item concerning roof damage (which respondent challenged) remained to be done on the Ericsson School project. Johnson further testified that both schools had been used by the school district for their intended purpose, as public schools, since sometime in 1982. Finally, Johnson stated that what remained to be done in the school district's relationship with the general contractor was a final contract accounting, which involved monetary adjustments.

St. Paul Fire & Marine argues that the trial court properly found acceptance on the basis of evidence that the buildings had been occupied since 1982 and completed since 1983. However, for acceptance to be inferred from the use of the building and the surrounding circumstances, the evidence must show an act by the owner with intent

> to receive the building as its own as a compliance with the required duty of the contractor.

*Guaranteed Gravel*, 174 Minn. at 371, 219 N.W. at 548.

■ Evidence indicating that the owner considers the building to be in compliance with the contract is important, because acceptance by the owner operates as

a waiver of any readily ascertainable defects in the construction. *See* 2 S. Stein, *Construction Law* ¶ 7.08 (1986). Mere use and completion of the building, without more, does not even raise an issue of fact on whether acceptance has occurred. *See Alexander Construction*, 354 N.W.2d 535, 538 (affirming grant of summary judgment in favor of subcontractor despite affidavits stating that building had been completed and in use months before the notice of claim was filed).

■ Even when completion is evidenced by the issuance of a final contract voucher, more is required for a finding of "acceptance" under the statute. After completion,

there may well have been need for further investigation of the true value of the work and material furnished; ascertainment of the value of extra work done and material used therein; the [public authority] must be sure that there are no offsets, counterclaims or unfulfilled covenants; only after all the foregoing have been checked and found to be correct and agreeable to the contractor, the obligee and the surety is [final payment authorized]. If defects had appeared or it was discovered that items had been improperly charged, obviously the [date of completion and the date the voucher was issued] would not have been controlling.

*Wheeler Lumber*, 218 Minn. at 448, 16 N.W.2d at 521–22 (quotation marks omitted).

■ In this case final payment had not been authorized and accounting issues remained at the time Spartan filed its notice of claim. Unfortunately, the record does not disclose the nature of those issues, but it is possible that they relate to the extent to which the school board considered the projects to have been in compliance with the contract. For example, construction coordinator Johnson testified that the school district had not paid, and did not intend to pay, the general contractor for certain work that had not been completed.

the Contract fully performed, he will promptly issue a final Certificate for Payment * * *. (Emphasis added). However, because the issue of the effect of these provisions was not ad-

dressed before the trial court, we do not rely on them here.

Even issues described by counsel for St. Paul Fire & Marine as determinations of "who owed whom what" would fall under *Wheeler Lumber*'s description of offsets and counterclaims as possible obstacles to final acceptance.

In both *Alexander Construction* and *Wheeler Lumber* the public authorities had established formal acceptance procedures, and St. Paul Fire & Marine argues that those cases do not apply where, as here, there are no such procedures. However, even under *Guaranteed Gravel*, there must still be some evidence indicating that the public body considered the buildings to be in compliance with the contract. Mere use of completed buildings will not suffice, at least where contract issues remain unresolved.

This result is also mandated by the need for certainty in the timing of notice. The trial court made no finding on when "acceptance" had occurred, yet its conclusion that notice was not timely implies that acceptance must have been considered to have occurred sometime between the completion of the building in 1983 and March 1984, 90 days before the notice was filed. However, nothing in the record other than the completion of the projects points to a specific date on which acceptance occurred, and the record does not disclose a specific date of completion.

Equating acceptance with completion and use would require that subcontractors constantly police projects to determine when they are completed and when they are first used. *See Alexander Construction*, 354 N.W.2d at 538. Even where the public authority does not have an established procedure for acceptance, a finding of acceptance must be based on some event which indicates that the public authority considers the completed project to be in compliance with the contract.

## DECISION

The trial court erred in finding acceptance on the basis of completion and use of the buildings when contract issues remained unresolved and there was no evidence that the school district considered the buildings to be in compliance with the contract.

Reversed and remanded for further proceedings.